## WEST *v.* CABELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF TEXAS.

No. 258. Submitted February 2, 1894. — Decided April 16, 1894.

A warrant of a commissioner of a Circuit Court of the United States, commanding the arrest of a person of a certain name, not otherwise designating or describing him, upon a charge of murder, will not justify the arrest of a person who has never been known or called by that name, notwithstanding the commissioner testifies that he was the person intended.

THIS was an action brought November 5, 1887, by Vandy M. West against William L. Cabell and six other persons, upon a bond, dated May 19, 1886, given by Cabell, the marshal of the United States for the Northern District of Texas, as principal, and by the other defendants, as his sureties, with condition that Cabell, "by himself and by his deputies, shall faithfully perform all the duties of the said office of marshal." The breach alleged was that Edward W. Johnson, one of the deputies of Cabell, on August 16, 1887, unlawfully arrested and imprisoned the plaintiff upon a warrant issued by a commissioner of the Circuit Court of the United States "to arrest the body of James West" upon a charge of murder of John Cameron in the Indian country in the Western District of Arkansas; to the damage of the plaintiff in the sum of $10,000.

The answer denied the allegations of the petition; and alleged that the arrest and imprisonment were upon a valid warrant issued by the commissioner, charging the plaintiff with the crime of murder.

At the trial, there was evidence tending to prove the following facts: The plaintiff's name was Vandy M. West, and he was never known or called by any other name. He resided and did business as a grocer at Mineral Wells, Texas, having come there from Colorado in December, 1886; and had for many years before his arrest borne a good character as a

peaceable man, and was not the murderer of Cameron. On August 16, 1887, having gone with a wagon load of wheat to Weatherford, twenty miles from his home, he was there arrested by Johnson upon the warrant above mentioned; and protested against the arrest, on the ground that he was the wrong man, that his name was not James West, but Vandy West, and that he was innocent of the crime charged, and offered to make proof of his identity, if permitted to go with Johnson to his home, or to wait for an answer to a telegram; but Johnson refused to permit him to do either, and carried him, against his will, in a hack and in irons, sixty miles to Graham, and there lodged him in the jail of Young County, and immediately informed the commissioner of the arrest. On the next day, the commissioner issued and placed in the hands of Johnson a subpœna for William Sturdevant, who resided sixty miles off at Henrietta, and on whose information principally Johnson had made the complaint on oath against James West, on which the warrant was issued. Sturdevant was then too ill to travel; but on September 1, 1887, and after seeing the plaintiff in jail, he appeared before the commissioner, and stated on oath that the plaintiff was not the West who killed Cameron. Because of the absence of Johnson, who was serving civil process elsewhere, the plaintiff was detained in jail, and was never brought before the commissioner, until September 5, 1887, when Johnson returned, and, by order of the commissioner, discharged him. No order was ever issued by the commissioner for the arrest or commitment of the plaintiff, other than the warrant aforesaid, and a verbal order to Johnson, when he reported the arrest, to hold the prisoner until the commissioner was ready to try him.

The defendants offered oral evidence tending to show that the warrant by virtue of which the arrest was made was issued for the arrest of the plaintiff, although by a wrong name; that Johnson, upon whose complaint the warrant was issued, had made inquiries from different sources concerning the identity of the plaintiff with the West who was charged with the murder of Cameron; and that the commissioner, upon the complaint made to him, issued the warrant for the arrest of

James West, but intending it for the arrest of the plaintiff. The plaintiff objected to the introduction of this testimony, because, the warrant commanding the arrest of James West, it was not competent to show by parol testimony that the plaintiff, who bore another name, was the person for whose arrest the warrant was intended by the commissioner issuing it. But the court overruled the objection, and admitted the testimony; and the plaintiff excepted to its admission.

The commissioner, being called as a witness for the defendants, testified that he had no personal acquaintance with V. M. West, and that the only time he ever saw him was when he discharged him from imprisonment, and did not at that time know him to be V. M. West; that Johnson, at the time of making the complaint, informed him that "he had located a man by the name of West near Mineral Wells who was charged with murder in the Western District of Arkansas," and that he had written to the United States marshal for that district, and received a reply from him; that the commissioner had no other knowledge "of the charge against West," and of his own knowledge "did not know of any other West living at or near Mineral Wells," and, "from the information received from Johnson, the West living at or near Mineral Wells was the one the warrant was issued for." On cross-examination, the commissioner testified that he "put the name James West in the warrant of arrest, because James West was the man complained against."

Johnson testified that in the spring of 1887 Sturdevant informed him that "James West, sometimes called Bud West, who had killed John Cameron in the Indian Territory in 1886, was at or near Mineral Wells, Palo Pinto County, Texas," and gave him "a personal description of the West who killed said Cameron," and he then wrote to the United States marshal of the Western District of Arkansas, who replied that he did want West for the murder of Cameron; that Johnson then went to Palo Pinto County to investigate the matter, and there examined the tax books, and submitted to the sheriff of the county the description given by Sturdevant of the West who killed Cameron, and ascertained that the plaintiff was

the only West in the county, and in personal appearance corresponded to Sturdevant's description; that, before he made the complaint, he informed the commissioner of these facts; and that "in that section of the country it was frequently the case that men were known by other than their correct names, so much so that witness attached but little importance to the name by which a man was called."

The plaintiff requested the court to instruct the jury "that the warrant for the arrest of James West will not authorize the arrest of Vandy M. West, though Vandy M. West may have been the party intended, he not being named or described in the warrant."

The court refused so to instruct the jury; and instructed them as follows: "There is no proof in this case tending to show that the plaintiff was ever known by the name of James West, or by any other name than V. M. West and Vandy West. There is proof tending to show that for a number of years and in various places he has been always known by the name of Vandy West. The defendants claim, however, that the plaintiff is the man for whose arrest the warrant was issued, and it has been suggested to you in the argument of the defendants' counsel that Ed. Johnson, being the man who made the complaint, knew what man he had in his mind when he made the complaint. It is not material what was in the mind of Johnson when he made the complaint, but what was in the mind of the commissioner when he issued the warrant; *and if you believe from all the evidence that the plaintiff is the man for whose arrest the commissioner issued the warrant, you will find that the defendants are not liable for damages on account of the mere fact of the arrest.* If, in making the arrest or in holding the prisoner, any harsher means were used than were reasonably necessary for taking and safely keeping him, considering the gravity of the charge, the defendants would be liable for any damages thereby occasioned the plaintiff."

The plaintiff excepted to the refusal to give the instruction requested, and to that part of the instructions given which is above printed in italics; and, after verdict and judgment for

the defendants, tendered a bill of exceptions, and sued out this writ of error.

*Mr. I. W. Stephens* for plaintiff in error.

*Mr. A. H. Garland* for defendants in error.

The question at issue is to be determined by the provisions of the Texas Code, in force at the time of the arrest, which, by Art. 26, are to be liberally construed so as to attain the object intended by the legislature. Those provisions are as follows:

"Art. 458. A capias shall be held sufficient if it have the following requisites: (1) That it run in the name of 'The State of Texas.' (2) That it name the person whose arrest is ordered, or, if unknown, describe him," etc.

"Art. 512. When the defendant is arraigned his name, as stated in the indictment, shall be distinctly called, and unless he suggest by himself or counsel that he is not indicted by his true name, it shall be taken that his name is truly set forth, and he shall not thereafter be allowed to deny the same by way of defence.

"Art. 513. If the defendant or his counsel for him suggest that he bears some name different from that stated in the indictment, the same shall be noted upon the minutes of the court, the indictment corrected by inserting therein the name of the defendant as suggested by himself, the style of the cause changed so as to give his true name, and the cause proceed as if the true name had been first rented in the indictment."

In *Martin* v. *The State*, 40 Texas, 23, 25, the court, after citing several provisions of the Criminal Code, and Code of Criminal Procedure, and especially that as to how the latter should be construed, say, "With these general provisions borne in mind, we can more readily comprehend the great changes sought to be effected by them; for these rules of construction are wholly variant from, and, indeed, in conflict with, the strictness of construction and the technical nicety of

phraseology and circumlocution of statement which marred and embarrassed the administration of justice under the common law rules and practice."

Applying the primary rule of construction to the provisions with reference to warrants, capiases, etc., that is, give them a *liberal construction*, so as to attain the objects and purposes of their enactment, to prevent, suppress, and punish crime, the result is obvious. The name of the accused was required to be given in the warrant, or, if not known, a description of him is intended alike for the protection of the citizen and officer executing the same. It was to so identify the accused that the officer could with certainty arrest the identical person for whose arrest the warrant was intended.

In the very recent case of *Cabell* v. *Arnold*, 23 S. W. Rep. 695, which was an action for damages for illegal arrest and false imprisonment, a complaint had been made before the United States commissioner at Dallas, charging Arnold with the offence of robbing the United States mail carrier of the mail, a warrant was duly issued and placed in the hands of Cabell, the then United States marshal, who was at Dallas. Cabell telegraphed to his deputy, then at Weatherford, that the warrant had been issued and placed in his hands for Arnold, and for the deputy to go to Palo Pinto County and arrest Arnold and bring him to Dallas. This was done, and on arriving at Dallas the deputy delivered Arnold to the marshal, who still held the warrant. The contention which was successfully maintained in the trial court and Court of Civil Appeals, was that as the deputy did not have the possession of the warrant at the time he made the arrest, it was an illegal arrest and detention, and therefore entitled Arnold to a recovery for the damages. But upon writ of error, the Supreme Court of Texas reversed the judgment, holding that the arrest was legal and that Arnold was not entitled to recovery.

This and the Martin case both show the liberal construction given to the provisions of the Code of Criminal Procedure by the court of last resort in this State.

No description of West was given either in the warrant or

information for the simple reason that both Johnson and the commissioner believed that his name was James West. From the information received and the investigation made, they believed that they had found and located, in the person of the plaintiff in error, the identical James West who had committed the murder in the Indian Territory. If they had been correct in this, of course there would have been no place for any other name than "James West" in the warrant. It is an indisputable fact that these officers believed that plaintiff in error was the offender James West, and he was the identical person that was intended in the complaint and warrant. If this had been a case against Johnson and the commissioner for malicious prosecution, then the inquiry might be material as to whether they had probable cause for proceeding as they did. But here the naked question presented is, that although the plaintiff in error was the identical person against whom the warrant issued, was the arrest illegal because of the mistake in his name? It seems that if the code is to be construed as directed by the legislature, there is neither substance nor shadow in the contention of plaintiff in error.

The case of *Williams* v. *Tidball*, by the Supreme Court of Arizona, 8 Pac. Rep. 351, is in point, and upon similar facts, and it was there held that the plaintiff could not recover. While the case of *Allen* v. *Leonard*, 28 Iowa, 529, is directly in point; there the name given in the warrant was "James Allen," the true name of the party was "William V. Allen," the action was for false imprisonment, the court held, " if the plaintiff was the party against whom the information was filed, and for whose arrest the warrant was issued, although there was a mistake in his name, he could not recover as for false imprisonment or for assault and battery done under the authority of the process, even if innocent of the offence charged." See also *Bailey* v. *Wiggins*, 5 Harrington, (Del.) 462.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

This was an action upon a marshal's bond, in the usual

form, the condition of which was that the marshal, by himself and his deputies, should faithfully perform all the duties of his office, and upon which any person injured by a breach of the condition might maintain an action. Rev. Stat. §§ 783, 784; *Lammon* v. *Feusier*, 111 U. S. 17. The breach relied on by Vandy M. West, the plaintiff in this case, was his arrest, against his protest, by a deputy of the marshal, under a warrant issued by a commissioner, commanding the arrest of "James West," and not otherwise designating or describing the person to be arrested, upon a complaint of the deputy marshal, charging James West with the murder of John Cameron. The defence was that the arrest of the plaintiff under that warrant was lawful. At the trial, it appeared that the plaintiff had never been known or called by the name of James West, or by any other name than his own. Notwithstanding which, the court, against the objections and exceptions of the plaintiff, admitted oral testimony of the commissioner and of the deputy marshal that the warrant was issued and intended for the arrest of the plaintiff; and instructed the jury that, if they believed that the plaintiff was the man for whose arrest the commissioner issued the warrant, the defendants were not liable for damages on account of the mere fact of arrest.

By the common law, a warrant for the arrest of a person charged with crime must truly name him, or describe him sufficiently to identify him. If it does not, the officer making the arrest is liable to an action for false imprisonment; and if, in attempting to make the arrest, the officer is killed, this is only manslaughter in the person whose liberty is invaded. 1 Hale P. C. 577, 580; 2 Hale P. C. 112, 114; Foster's Crown Law, 312; 1 East P. C. 310; 1 Chit. Crim. Law, 39, 40; *Huckle* v. *Money*, 2 Wilson, 205; *Money* v. *Leach*, 3 Burrow, 1742, 1766, 1767; *S. C.* 1 W. Bl. 555, 561, 562; *Rex* v. *Hood*, 1 Moody C. C. 281; *Hoye* v. *Bush*, 1 Man. & Gr. 775; *S. C.* 2 Scott N. R. 86. Likewise, a warrant of arrest in a civil action, which does not name or describe the person to be arrested, is no justification of the officer. *Cole* v. *Hindson*, 6 T. R. 234; *Shadgett* v. *Clipson*, 8 East, 328; *Finch* v. *Cocken*, 2 Cr., M. & R.

196; *S. C.* 1 Gale, 130, and 3 Dowling, 678; *Kelly* v. *Lawrence*, 3 H. & C. 1.

The principle of the common law, by which warrants of arrest, in cases criminal or civil, must specifically name or describe the person to be arrested, has been affirmed in the American constitutions; and by the great weight of authority in this country a warrant that does not do so will not justify the officer making the arrest. *Commonwealth* v. *Crotty*, 10 Allen, 403; *Griswold* v. *Sedgwick*, 6 Cowen, 456, and 1 Wend. 126; *Mead* v. *Haws*, 7 Cowen, 332; *Holley* v. *Mix*, 3 Wend. 350, 354; *Scott* v. *Ely*, 4 Wend. 555; *Gurnsey* v. *Lovell*, 9 Wend. 319; *Melvin* v. *Fisher*, 8 N. H. 407; *Clarke* v. *Bragdon*, 37 N. H. 562, 565; *Johnston* v. *Riley*, 13 Georgia, 97, 137; *Scheer* v. *Keown*, 29 Wisconsin, 586; *Rafferty* v. *People*, 69 Illinois, 111.

In *Commonwealth* v. *Crotty*, for instance, in which Morris Crotty and others were indicted and convicted for a riot in resisting the arrest of Crotty upon a warrant commanding the arrest of "John Doe or Richard Roe, whose other or true name is to your complainant unknown," the conviction was set aside by the Supreme Judicial Court of Massachusetts, upon the grounds that the warrant was insufficient, illegal, and void, because it did not contain Crotty's name, nor any description or designation by which he could be known and identified as the person against whom it was issued, and was in effect a general warrant, upon which any other person might as well have been arrested, as being included in the description; and that "the warrant being defective and void on its face, the officer had no right to arrest the person on whom he attempted to serve it; he acted without warrant, and was a trespasser; the defendant whom he sought to arrest had a right to resist by force, using no more than was necessary to resist the unlawful acts of the officer; an officer who acts under a void precept, and a person doing the same act who is not an officer, stand on the same footing; and any third person may lawfully interfere to prevent an arrest under a void warrant, doing no more than is necessary for that purpose." 10 Allen, 404, 405.

The Fourth Article of Amendment of the Constitution of the United States declares that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The provision of section 1014 of the Revised Statutes, which authorizes an offender against the laws of the United States to be arrested and imprisoned or bailed, by a judge of the United States or a commissioner of the Circuit Court, in any State where the offender may be found, "and agreeably to the usual mode of process against offenders in such State," is necessarily subordinate to the declaration of the Constitution that all warrants must particularly describe the person to be seized.

The laws of the State of Texas in this regard are in conformity with this article of the Constitution of the United States. By the constitution of Texas, art. 1, sec. 9, "no warrant to search any place or to seize any person or thing shall issue, without describing them as near as may be, nor without probable cause, supported by oath or affirmation." And by the statutes of the State the warrant, as well as the complaint, "must specify the name of the person whose arrest is ordered, if it be known; if not known, then some reasonably definite description must be given of him;" and "the officer or person executing a warrant of arrest shall take the person whom he is directed to arrest forthwith before the magistrate." Penal Code of Texas, arts. 233, 236, 247; *Alford* v. *State*, 8 Texas App. 545, 562; *Hays* v. *Creary*, 60 Texas, 445; *Formwalt* v. *Hylton*, 66 Texas, 288.

The only cases cited by the defendants in error, which have any tendency to support the rulings at the trial, were in Delaware, in which the Chief Justice dissented, and in Iowa and Arizona, whose statutes provided that "the warrant must specify the name of the defendant, and, if it be unknown to the magistrate, may designate him by any name;" and in none of those cases was any notice taken of opposing prece-

dents or constitutional injunction. *Bailey* v. *Wiggins*, 5 Harrington, (Del.) 462; *Allen* v. *Leonard*, 28 Iowa, 529; Code of Iowa of 1860, § 4535; *Williams* v. *Tidball*, 8 Pac. Rep. 351; Compiled Laws of Arizona of 1877, c. 11, § 89.

In the case at bar, the effect of the rulings and instructions of the court was to give the jury to understand that the private intention of the magistrate was a sufficient substitute for the constitutional requirement of a particular description in the warrant. For this reason,

*The judgment is reversed, and the case remanded with directions to set aside the verdict and to order a new trial.*