# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1322

_____

| | | |
|---|---|---|
| Yorie Von Kahl, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 11, 2000

Filed: March 9, 2001

_____

Before LOKEN, HEANEY and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.

Yorie Von Kahl appeals the district court's[1] denial of his 28 U.S.C. § 2255 motion without conducting an evidentiary hearing. We affirm.

_____

[1]The Honorable John B. Jones, United States District Judge for the District of North Dakota.

I.  BACKGROUND

The facts giving rise to this appeal are set forth in some detail in our opinion in Kahl's direct appeal.  See United States v. Faul, 748 F.2d 1204, 1208-1210 (8th Cir. 1984).  Briefly, in February 1983, a shoot-out erupted in Medina, North Dakota when United States Marshals attempted to execute a warrant for the arrest of Kahl's father Gordon Kahl for a probation violation.  Two marshals were killed, and Kahl was seriously injured.  Kahl was later convicted by a jury of two counts of second-degree murder and lesser charges, and sentenced to life imprisonment.  On direct appeal, we affirmed Kahl's convictions.  See id. at 1223.

In April 1996, Kahl filed a § 2255 motion challenging his conviction.  In a subsequent amended motion, Kahl claimed (1) he was denied counsel while in custody, in violation of his Sixth Amendment rights; (2) he was denied effective assistance of counsel; (3) the trial judge was biased against him; (4) he was prejudiced by a juror's failure to disclose a personal relationship with a prosecutor; (5) the jury as a whole was biased; (6) he was prejudiced by prosecutorial misconduct; (7) a deputy United States Marshal that was a victim of the Kahl shoot-out had improper contact with the jury; and (8) newly-discovered evidence called into question the outcome of his trial.  With respect to his ineffective-assistance claim, Kahl asserted, inter alia, that counsel failed to object to prosecutorial misconduct and inadmissible evidence, conduct an adequate pretrial investigation, present certain evidence and arguments at a suppression hearing, challenge the validity of the warrant for Kahl's father's arrest, pursue disqualification of the trial judge, and  preserve several issues for appeal.

After an initial review pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings, the district court on March 31, 1997, summarily dismissed all of Kahl's claims except his claims of ineffective assistance and trial judge bias.  After the government responded to the remaining claims, the district court issued an order on October 12, 1999 rejecting those claims and dismissing Kahl's motion.  On November

11, 1999, Kahl filed a notice of appeal. Two days later, through a new attorney, Kahl filed a motion for leave to file out-of-time a motion for reconsideration and for an extension of time in which to file such a motion for reconsideration. On November 19, Kahl filed a motion to withdraw his November 11 notice of appeal, stating that the notice of appeal had been filed by his earlier attorney without his permission. Kahl supported his motion with a lengthy declaration recounting the difficulties he had had with his post-trial representation.

On December 8, Kahl filed a fifty-page document styled a "Motion for Rehearing of Court's Memorandum, Opinion and Order Filed March 31, 1997," which contained extensive argument and cited new evidence in support of the claims the district court had summarily dismissed. Also on December 8, Kahl filed a thirty-one-page "Motion for Reconsideration of Court's October 12, 1999 Order Denying Yorie Kahl's § 2255 Motion," in which he argued the claims the district court had rejected in its October 1999 order, and requested that the court consider two new issues: (1) counsel's failure to object to a jury instruction, and (2) the government's failure to disclose the existence of two additional All Points Bulletins (APBs) issued on the day of the shoot-out that would have corroborated Kahl's self-defense theory.

On December 13, Kahl filed a second notice of appeal. In a December 23 order, the district court denied Kahl's pending motions. The court observed that Kahl's initial notice of appeal divested the lower court of jurisdiction, and it thus lacked jurisdiction to reconsider its earlier rulings. Nevertheless, the court added that even if it had the power to do so, it would not grant Kahl's motions for reconsideration, as Kahl's § 2255 motion had been pending for some three years, giving him ample time to muster his evidence and arguments.

Kahl appeals. He has briefed a number of the issues he attempted to present to the district court by motions for reconsideration, and has abandoned several of the issues contained in his amended § 2255 motion.

## II. DISCUSSION

We review de novo the district court's denial of a § 2255 motion without an evidentiary hearing and will affirm only if the motion, files, and record conclusively show the movant is not entitled to relief. See Latorre v. United States, 193 F.3d 1035, 1038 (8th Cir. 1999).

As an initial matter, we consider the claims that first appeared in Kahl's out-of-time motion for reconsideration--filed after his notice of appeal--to be dead on arrival. See Liddell v. Board of Educ., 73 F.3d 819, 822-23 (8th Cir. 1996) (as general rule, once notice of appeal is filed, district court has no jurisdiction to reconsider prior decision); Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) ("A motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment.").

We also reject Kahl's effort to supplement the record on appeal with some 177 pages of evidence. This court recognizes a "rarely exercised . . . narrow exception" to the general rule that the appellate record is limited to the record made below. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63-64 (8th Cir.1993). However, both the ample time Kahl has had to develop a record since filing his § 2255 motion in April 1996 and the sheer volume of the material that Kahl now seeks to present suggest that any gaps in the record are due to a lack of diligence on Kahl's part. Moreover, our review of Kahl's Supplemental Appendix does not reveal any material that we must consider in the interests of justice. Cf. Miller v. Benson, 51 F.3d 166, 168 (8th Cir.1995) (permitting pro se appellant to expand record where appellant did not learn that district court had not received his motion until after court dismissed appellant's case); Dakota Indus., 988 F.2d at 63-64 (permitting supplementation of district court record where parties had not completed discovery and one party's misrepresentation left district court with incomplete record).

A.  Kahl's statements

Kahl was injured in the February 13 shoot-out when he was shot in the abdomen with a shotgun.  He underwent surgery that day, and woke the following day.  Though he was sedated, he spoke to Special Deputy Sheriff Ronald Perleberg.  At 6:00 a.m. on February 14, Kahl asked to speak to Perleberg in order to tell his story.  He was informed that he did not have to speak, but elected to do so nevertheless.  At 9:00 a.m., FBI agents read Kahl his Miranda rights, and listened to Kahl's story.  On the morning of February 21, Kahl again asked to speak to the agents.  The agents read Kahl his Miranda rights a second time, and Kahl again spoke.

After a hearing that included testimony from Kahl's physician and two assistant professors of pharmacy, the district court suppressed Kahl's February 14 statements, but declined to suppress his statements of February 16 and 21.  The court concluded the later statements were voluntarily and knowingly initiated and uninfluenced by coercion or medication.  On direct appeal, we affirmed, concluding that Kahl had failed to show the district court's factual findings were clearly erroneous, and that "the totality of the circumstances indicate[d] that the statements were a product of a rational intellect and a free will."  Faul, 748 F.2d at 1220 (internal quotation omitted).

In denying Kahl's § 2255 motion, the district court rejected Kahl's argument that counsel was ineffective for failing to present his testimony at the suppression hearing, noting that Kahl had testified at trial, and that his testimony there failed to establish that his statements were coerced.  On appeal, Kahl urges his statements resulted from being held incommunicado and being denied the opportunity to speak with an attorney, in addition to other "psychological factors."  He asserts not only that counsel was ineffective for failing to present his testimony at the suppression hearing, but that we may not fairly judge the prejudice of that failure by examining his trial testimony on the issue, as his trial attorney also failed to competently question him on the issue.

Kahl has submitted a supporting declaration in which he presents facts that he claims his testimony--at trial and at the suppression hearing--should have brought out; little of it is relevant to the voluntariness of his statements. Much of Kahl's declaration consists of his theories regarding the validity of the warrant for his father's arrest and allegations that law enforcement officers interfered with his medical care. Kahl also recounts that he repeatedly asked to use a telephone to contact his family to secure legal assistance, and repeatedly asked for information about proceedings against him. Kahl states, however, that he was told that he was not allowed to call, write, watch television, or read newspapers, and that his only contact could be with the FBI. Kahl adds that as a result of the powerful pain-killing drugs he was prescribed while hospitalized, he was physically and mentally exhausted and experienced difficulty concentrating, and was therefore unable to voluntarily and knowingly waive any rights or sign any statements.

For Kahl's ineffective-assistance claim to succeed, he must demonstrate both that counsel's representation fell below an objective standard of reasonableness and that he was thereby prejudiced. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Assuming for the sake of argument that counsel's decision not to present Kahl's testimony at the suppression hearing could be characterized as deficient performance, we believe Kahl's declaration fails to demonstrate that he was thereby prejudiced. Even if Kahl had invoked his right to the presence of an attorney, there is nothing in his declaration that calls into question the district court's conclusion--upheld by this court on appeal--that the February 14 and 21 contacts were initiated by the defendant. Simply stated, Kahl's isolated hospital stay[2] hardly presents the sort of police-dominated coercive atmosphere that would cause us to doubt the intelligence or voluntariness of his waiver of his Miranda rights, and our review of the suppression

---

[2]We note the government presented testimony at the suppression hearing that Kahl was visited by his sister and received daily visits from a minister.

hearing record indicates that the issue of Kahl's physical and mental states was thoroughly developed through medical testimony.

Kahl asserts that he was denied his Sixth Amendment right to counsel while in the hospital because he was not allowed to contact an attorney from the hospital and because authorities did not permit Gerald LaFountain, a Montana attorney hired by friends to represent Kahl, to see him in the hospital. In a supporting affidavit, LaFountain attests that he was hired by M.J. "Red" Beckman to represent Kahl and codefendant Faul, and that he traveled to North Dakota for this purpose. According to LaFountain, however, between February 17 and 20, he was twice denied access to Kahl in the hospital despite presenting himself as Kahl's attorney. Further, LaFountain attests that he and an investigator were "constantly followed and harassed by local and federal law enforcement officials." (Appellant's App. at 57.)

We are, from the outset, highly skeptical of Kahl's claim that his rights were somehow violated when LaFountain was denied access. Although LaFountain attests that he considered Kahl to be his client at the time, the record strongly suggests that LaFountain's visit was more in the nature of an attempt to solicit Kahl as a client. Moreover, the Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (internal quotations omitted). The filing of a criminal complaint and the issuance of an arrest warrant do not constitute the initiation of an adverse judicial proceeding for purposes of McNeil. See United States v. Moore, 122 F.3d 1154, 1155-56 (8th Cir. 1997). Not until his preliminary hearing on March 9, 1983 did Kahl's Sixth Amendment right to counsel attach; accordingly, his Sixth Amendment claim must fail. See Moran v. Burbine, 475 U.S. 412, 429-31 (1986) (rejecting Sixth Amendment challenge to alleged police interference with attorney's attempts to contact defendant).

B.  Validity of warrant

Kahl argues his attorney rendered deficient performance because he failed to challenge the validity of the warrant for Gordon Kahl's arrest.  According to Kahl, the warrant was void on its face because (1) the section of the preprinted form specifying the officer authorized to execute the warrant was left blank; (2) the warrant was issued by a clerk of the district court; (3) the complaint accompanying the warrant was not sworn to; and (4) the warrant had sat idle and unattended for nearly two years before the attempt to execute it.

Kahl attacks the validity of the warrant in order to advance his theory that he was entitled to forcibly resist an unlawful arrest.  Assuming for the sake of argument that the warrant for Kahl's father was defective, we unequivocally reject Kahl's contention that he was therefore entitled to fire upon the officers.

At common law, a person was permitted to forcibly resist an unlawful arrest, and third parties were permitted to aid such resistance.  See John Bad Elk v. United States, 177 U.S. 529, 534-37 (1900); West v. Cabell, 153 U.S. 78, 86 (1894).  However, in Hodgdon v. United States, we indicated--albeit in dicta--that the common law rule was no longer good law:  "[N]o person should be entitled to resist with deadly force a marshal operating under color of authority, even though it is later found that no actual authority existed.  Adequate legal protection exists against unlawful searches and arrests."  365 F.2d 679, 685 (8th Cir. 1966) (citations omitted).  This statement is consistent with the widespread criticism of the rule and the trend toward its abrogation. See United States v. Johnson, 542 F.2d 230, 232-33 (5th Cir. 1976) ("We do not need citizen avengers who are authorized to respond to unlawful police conduct by gunning down the offending officers."); see generally State v. Hobson, 577 N.W.2d 825, 834 (Wis. 1998) (noting trend toward abrogation and rule's elimination from Model Penal Code); Andrew P. Wright, Resisting Unlawful Arrests: Inviting Anarchy or Protecting

-8-

Individual Freedom?, 46 Drake L. Rev. 383, 388 n.49 (1997) (noting thirty-six states in which right to resist unlawful arrest has been eliminated).

We find it unnecessary, however, to sort out the rule's continued vitality in this circuit, as we are wholly unconvinced that there is a reasonable probability that, but for the alleged error, the result of Kahl's trial would have been different. See DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (defining prejudice in ineffective-assistance context). The common law right to forcibly resist an unlawful arrest permits only such force as is "absolutely necessary," Bad Elk, 177 U.S. at 534, and the force that Kahl seeks to justify plainly exceeds that which was absolutely necessary. Cf. Government of the Virgin Islands v. Duvergee, 456 F.2d 1271, 1273 (3d Cir. 1972) ("Bad Elk is not authority for the proposition that unreasonable force may be used in resisting an unlawful arrest."); United States v. Angelet, 231 F.2d 190, 193 (2d Cir. 1956) ("[T]he use of 'reasonable force' only would have been open to defendants.").

C. Jury bias

Kahl argues he was denied a fair trial, asserting that a particular juror lied concerning his relationship to a prosecutor and concealed his existing bias against Kahl. At voir dire, the juror was asked whether he knew or was related to any of the attorneys at trial. The juror indicated that he and Assistant United States Attorney Lynn Crooks had lived in the same small town as children. When questioned further, the juror denied any social or business relationship, stating that he "just kn[e]w who [Crooks] is" (Appellee's App. at 257-58), and that nothing about his relationship with Crooks would interfere with his ability to be a fair and impartial juror.

Kahl has produced an interview in which another juror in the case states that the first juror indicated either that Crooks was a friend or that they went to school together. It is unclear whether this statement refers to statements at voir dire or a subsequent

statement in some other context. Regardless, this statement is insufficient to establish that the juror was biased.

A concealed bias claim based on a juror's voir dire responses requires a showing that the challenged juror answered dishonestly, not just inaccurately; that the juror was motivated by partiality; and that the true facts, if known, would have supported striking that juror for cause. United States v. Tucker, 137 F.3d 1016, 1026 (8th Cir. 1998). Even accepting for the sake of argument the tortured inferences Kahl would have us draw from snippets of comments made long after the actual trial, nothing Kahl has provided suggests that the juror's responses at voir dire were dishonest or motivated by partiality.

Kahl contends that the jury as a whole was biased against him because the voir dire conducted by the district court was insufficient to counter the pervasive negative media coverage accorded the Medina incident. On direct appeal, we rejected a similar challenge to the district court's denial of a change of venue based on the extensive publicity given to the incident. After reviewing the voir dire transcript, we concluded that Kahl had failed to show that the trial setting was inherently prejudicial or that the jury-selection process permitted an inference of actual prejudice. See Faul, 748 F.2d at 1213-16.

In his amended § 2255 motion, Kahl argued that subsequent juror interviews showed that a number of jurors had made up their minds as to his guilt prior to trial. He also maintained that he had been prejudiced by the district court's decision to conduct all voir dire questioning, and to do so in the presence of all prospective jurors. Kahl cited transcriptions of interviews of two jurors conducted in 1987 and 1990. The district court concluded that issues concerning pre-trial publicity and voir dire had been conclusively decided on direct appeal. Moreover, the court rejected Kahl's effort to stake an actual bias claim upon the interview statements as barred by Federal Rule of

Evidence 606(b) (upon inquiry into validity of verdict, juror may testify only on issue of outside influences or extraneous information).

Although we disagree with the district court that Rule 606(b) necessarily bars Kahl from using juror testimony to establish juror bias from pretrial media exposure, cf. Brofford v. Marshall, 751 F.2d 845, 853-54 (6th Cir. 1985), we nevertheless reject Kahl's effort to piece together a showing of juror bias using fragments of double hearsay. At best, Kahl's submissions present stale innuendo insufficient to persuade us that the district court abused its discretion in denying Kahl's motion without conducting an evidentiary hearing.

D. Improper Juror Contact

Kahl contends his due process rights were violated by improper contact between the jury and a deputy marshal who was both a victim and a trial witness. Kahl also argues that counsel was ineffective for failing to raise the issue on appeal. During the trial, the jury was sequestered in the care of the United States Marshals Service. In 1993, Shauna Faul, the wife of codefendant Scott Faul, signed an affidavit in which she attested to seeing Wigglesworth "with members of the jury sitting on [the Kahl trial] getting into a van with softball equipment." (Appellant's App. at 61.) Kahl further complains that the district court, upon being apprized of the contact, resolved the issue without calling witnesses and without transcribing the in-chambers proceedings.

In a criminal case, contact or communication with a juror during a trial about the matter pending before the jury is presumptively prejudicial. See Remmer v. United States, 347 U.S. 227, 229 (1954). "The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Id. According to the affidavit of Ralph A. Vinje, trial counsel for codefendant David Broer, the defense raised the issue before the district court in chambers. Although Vinje did

not recall how the defense approached the matter, he attested that in his recollection Wigglesworth denied having been involved, and the district court resolved the issue in the government's favor.

As an initial matter, we disagree with Kahl that the in-chambers discussion was required to be transcribed under 28 U.S.C. § 753(b). Recording of criminal proceedings not held in open court is left by § 753 to the discretion of the district court. See United States v. Hein, 769 F.2d 609, 610 (9th Cir. 1985). Where an untranscribed proceeding is to be at issue on appeal, Federal Rule of Appellate Procedure 10(c) provides a mechanism by which an appellant can attempt to reconstruct a record. Despite waiting more than ten years after his conviction became final to file his § 2255 motion, Kahl has made no effort to follow the Rule 10(c) procedure, and Vinje's affidavit--signed nearly ten years after the trial--provides only the barest sketch of the district court's resolution of the issue. Accordingly, our review of the issue is severely circumscribed.

What we know about the district court's handling of the issue is that the parties were given an opportunity to be heard on the alleged contact, that the district court apparently heard testimony from Wigglesworth, and that it resolved the issue in the government's favor. All this is wholly consistent with Remmer. On this record, we find it impossible to conclude that trial counsel's failure to appeal the issue was an unprofessional error, much less that Kahl was thereby prejudiced. While we are certainly troubled by the evidence suggesting that Wigglesworth engaged in a game of softball with the jurors, we disagree that this necessarily rose to the level of a violation of Kahl's due process rights. There is no evidence of "a continuous and intimate association" on the order of that in Turner v. Louisiana, 379 U.S. 466, 473 (1965), and no evidence that would lead us to believe that the government could not have met its burden under Remmer to show that the contact was harmless. Simply put, the record is insufficient to determine whether the district court's handling of the issue was improper, and we decline to engage in a presumption to that effect.

E.  Kahl's Gun

Kahl raises a number of claims for relief based on alleged prosecutorial misconduct, all of which the district court rejected.  Only one of these issues merits discussion.  Kahl asserts the government purposefully withheld Kahl's gun until the trial was nearly concluded.  In the same vein, Kahl contends the district court's handling of the issue was improper. Shortly before the end of Kahl's closing argument, FBI agents acting on an anonymous tip found Kahl's pistol in a parking lot in Fargo. The district court refused  to declare a mistrial, and, with the consent of  Kahl's attorney, the government introduced the pistol into evidence along with an explanation as to its sudden appearance.  The government stipulated that a bullet lodged in the pistol's handle was not of the caliber fired by Gordon Kahl and his associates during the shootout.  The district court did not allow Kahl to reopen his case or to give additional argument on the matter, but permitted counsel for codefendant Joan Kahl to argue on Kahl's behalf that the gun corroborated Kahl's testimony.

On direct appeal, Kahl challenged the admission of the gun, but on other grounds.  We concluded that the gun had served only to corroborate the defendants' testimony, and that the district court had acted properly in the face of "an obvious attempt at trial manipulation."  Faul, 748 F.2d at 1218.

Kahl's present arguments about the gun add little to the issue, given the absence of any evidence in the record to support his accusation that the government withheld the gun.  Moreover, the district court's response to the discovery of the gun was well within its discretion, and Kahl's attempts to construct constitutional errors around it are meritless.  Cf. Birt v. Montgomery, 725 F.2d 587, 593 (11th Cir. 1984) ("At some point, [the right to counsel of choice] must bend before countervailing interests involving effective administration of the courts.")

F.  Judicial bias/misconduct

Kahl raises several claims directed at the conduct of the district judge who presided over Kahl's trial, many of which are recycled from elsewhere in his brief and do not require additional discussion. With respect to his claim of judicial bias, the Supreme Court has made clear that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). Suffice it to say that Kahl's arguments for disqualification neither constitute reasonable bases to question the district judge's impartiality, see 28 U.S.C. § 455(a), nor meet the Liteky standard.

III. CONCLUSION

For the forgoing reasons, we affirm the judgment of the district court denying Kahl's § 2255 motion. Kahl's motion to supplement the record is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-