[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14660
_____

D.C. Docket No. 1:14-cr-20162-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TED PHILLIPS,
a.k.a. Duck,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 23, 2016)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and STORY,* District Judge.

WILLIAM PRYOR, Circuit Judge:

---

* Honorable Richard W. Story, United States District Judge for the Northern District of Georgia, sitting by designation.

This appeal presents a question of first impression about the Fourth Amendment: Can the police arrest someone based solely on a civil writ of bodily attachment for unpaid child support? Ted Phillips appeals his conviction of being a felon in possession of a firearm and an armed career criminal, 18 U.S.C. §§ 922(g)(1), 924(e)(1). A police officer discovered Phillips's firearm while arresting him on a writ of bodily attachment, Fla. Fam. L.R.P. 12.615. Phillips argues that the firearm should have been suppressed, but we disagree. Writs of bodily attachment are "Warrants" within the meaning of the Fourth Amendment, U.S. Const. Amend. IV, so the officer found the firearm during a valid search incident to arrest. Phillips also argues for the first time on appeal that he does not qualify for the 15-year mandatory minimum under the Armed Career Criminal Act, but his arguments are both waived and foreclosed by precedent. We affirm.

## I. BACKGROUND

In early 2014, Phillips was a wanted man. Police sought to question him about a recent shooting in Miami and to arrest him for failing to pay child support. In February, a Florida court issued a writ of bodily attachment for unpaid child support that "ordered" the police to "take [Phillips] into custody . . . and confine him[] in the county jail." But the writ allowed Phillips to "purge this contempt and be immediately released from custody at any time by the payment of the sum of $300.00." Two days later, the Miami-Dade Police Department issued a "Wanted

2

for Questioning" flyer, which included Phillips's name and picture and mentioned the recent shooting and the writ of bodily attachment. The flyer instructed the police to detain Phillips on sight.

On March 1, Officer Nelson Rodriguez spotted Phillips on the same street corner where the shooting had occurred. Officer Rodriguez knew about the flyer and the writ of bodily attachment. As Officer Rodriguez approached Phillips to arrest him, Phillips reached down toward his waistband. Fearing the worst, Officer Rodriguez grabbed Phillips's right hand and felt a metal bulge in his waistband. Officer Rodriguez removed the bulge, which was a loaded .380 caliber firearm. Phillips, a convicted drug dealer, was not allowed to have a firearm. A federal grand jury indicted Phillips on one count of being a felon in possession of a firearm and an armed career criminal, 18 U.S.C. §§ 922(g)(1), 924(e)(1).

Phillips moved to suppress the firearm, but the district court denied his motion. The district court concluded that a civil writ of bodily attachment is "no different" from a criminal arrest warrant for purposes of the Fourth Amendment. The district court ruled that Officer Rodriguez could arrest Phillips based on the writ and recover the firearm as part of a search incident to arrest.

After the district court denied his motion to suppress, Phillips conditionally pleaded guilty. The plea agreement stated that Phillips "understands and acknowledges that the Court . . . must impose a term of imprisonment of no less

3

than the statutory minimum of 15 years." But Phillips reserved his right to appeal the denial of his motion to suppress.

The probation office prepared a presentence investigation report, which recommended that Phillips be sentenced to 15 years of imprisonment. When a felon with three or more prior convictions for a "serious drug offense" is convicted of possessing a firearm, the Armed Career Criminal Act imposes a mandatory minimum sentence of 15 years. *Id.* § 924(e). The presentence investigation report concluded that Phillips was an armed career criminal under the Act because he had eight prior convictions for possessing cocaine with the intent to sell, Fla. Stat. § 893.13(1)(a). Phillips did not file any objections to the presentence investigation report.

At the sentencing hearing, the district court confirmed that Phillips had not objected to the presentence investigation report. His lawyer responded, "That is correct, your Honor." His lawyer then told the district court, "We request a sentence at 15 years, which is the minimum mandatory sentence." "[A] 15-year sentence is adequate to achieve all of the sentencing goals," his lawyer argued, "and we ask that the Court impose that sentence of 15 years." The district court agreed and sentenced Phillips to 15 years of imprisonment. After announcing his sentence, the district court asked Phillips whether he had any objections. His

lawyer responded, "No, your Honor," except that Phillips planned to appeal the denial of his motion to suppress.

## II. STANDARDS OF REVIEW

When the facts are undisputed, we review the legality of a search and the legality of a sentence *de novo*. *See United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006); *United States v. White*, 980 F.2d 1400, 1401 (11th Cir. 1993).

## III. DISCUSSION

Phillips raises two arguments on appeal. He argues that the district court should have granted his motion to suppress the firearm and that the district court should not have sentenced him as an armed career criminal. We address each argument in turn.

### A.  *The District Court Correctly Denied the Motion to Suppress.*

Phillips argues that Officer Rodriguez had no authority to conduct a search incident to arrest because he had no authority to arrest Phillips in the first place. Phillips contends that a civil writ of bodily attachment is not equivalent to a criminal arrest warrant for purposes of the Fourth Amendment. We disagree.

The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

5

searched, and the persons or things to be seized." U.S. Const. Amend. IV. The amendment contains two main parts: the Reasonableness Clause, which prohibits unreasonable searches and seizures, and the Warrants Clause, which requires warrants to meet certain requirements. An arrest is a "seizure" of a "person," so it must comply with the Reasonableness Clause. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735–36 (2011).

To determine whether an arrest is reasonable, "we begin with history. We look to the statutes and common law of the founding era to determine the norms that the Fourth Amendment was meant to preserve." *Virginia v. Moore*, 553 U.S. 164, 168 (2008). If history does not provide a conclusive answer, we apply the "traditional standards of reasonableness 'by assessing, on the one hand, the degree to which [the arrest] intrudes upon an individual's privacy and, on the other, the degree to which [the arrest] is needed for the promotion of legitimate governmental interests.'" *Id.* at 171 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

History resolves this appeal. The parties agree that the key question is whether a writ of bodily attachment for unpaid child support is a warrant within the meaning of the Fourth Amendment. Because history tells us that it is, Officer Rodriguez had the authority to arrest Phillips.

At the Founding, the presence of a valid arrest warrant made an arrest reasonable. Under the common law, constables had broad inherent authority to

6

arrest suspected criminals. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 330–33 (2001); 4 William Blackstone, *Commentaries on the Laws of England* \*289. Arrest warrants broadened that authority even further by vesting constables with the power of the justices of the peace. *See Payton v. New York*, 445 U.S. 573, 607–08 (1980) (White, J., dissenting); 1 James Fitzjames Stephen, *A History of the Criminal Law of England* 189–91 (London, MacMillan & Co. 1883). Authority mattered because, before the advent of the exclusionary rule in the 20th century, the remedies for an illegal search or seizure were self-help and tort suits. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). But an arrestee could not lawfully resist an officer who had a valid arrest warrant. *See* Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 624–25 & nn.203–04 (1999). And a valid arrest warrant was and remains today a complete defense to a tort suit for false imprisonment. *See* Akhil Reed Amar, *Fourth Amendment First Principles*, 107 Harv. L. Rev. 757, 779 (1994); 3 Blackstone, *supra*, at \*127; *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977) (en banc).

Precisely because warrants expanded an officer's authority and eliminated his tort liability, the Founding generation had concerns about them. The Founding generation was all too familiar with "general warrants," which allowed officers of the King to "rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 134 S. Ct. 2473, 2494 (2014); *see also*

7

William J. Stuntz & Andrew D. Leipold, *Warrant Clause*, *in The Heritage Guide to the Constitution* 426, 427–28 (David F. Forte & Matthew Spalding eds., 2d ed. 2014). English courts eventually held that general warrants were illegal absent legislative approval, *see, e.g.*, *Wilkes v. Wood*, 98 Eng. Rep. 489 (1763); *Entick v. Carrington*, 95 Eng. Rep. 807 (1765), and many early state constitutions banned them outright, *see, e.g.*, Md. Const. of 1776, Decl. of Rights, Art. 23; Mass. Const. of 1780, Pt. 1, Art. 14.

To ensure that the newly created Congress did not approve general warrants in the future, the Founding generation ratified the Warrants Clause of the Fourth Amendment. *See* Davies, *supra*, at 657–59. The Warrants Clause requires every warrant to be particular, sworn, and supported by probable cause. *See* U.S. Const. Amend. IV. A warrant is not valid, and it cannot render a search or seizure reasonable, unless it satisfies these requirements.

Phillips contends that civil writs of bodily attachment do not satisfy the Warrants Clause. In Florida, a court will issue a writ of bodily attachment for unpaid child support if it determines, by a preponderance of the evidence, that a person is liable for civil contempt. *See* Fla. Fam. L.R.P. 12.615(c); *Dep't of Children and Families v. R.H.*, 819 So. 2d 858, 861 n.3 (Fla. Dist. Ct. App. 2002); *In Interest of S.L.T.*, 180 So. 2d 374, 379 (Fla. Dist. Ct. App. 1965). Specifically, the court must find "that a prior order directing payment of support was entered

8

and that the alleged contemnor has failed to pay all or part of the support set forth in the prior order." Fla. Fam. L.R.P. 12.615(c)(1). Phillips contends that the Fourth Amendment requires warrants to be based on probable cause of a *crime*, not probable cause of a civil offense like contempt. He is mistaken.

The Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense. Nothing in the original public meaning of "probable cause" or "Warrants" excludes civil offenses. At the Founding, "probable cause" meant "made under circumstances which warrant suspicion." *Locke v. United States*, 11 U.S. 339, 348 (1813) (Marshall, C.J.). And "warrant" meant "[a] Precept under Hand and Seal to some Officer to bring an Offender before the Person granting it." *Warrant*, *A New Law Dictionary* 768 (Giles Jacob ed. 1739); *accord* 2 *Warrant*, *A New and Complete Law-Dictionary* 766 (Timothy Cunningham ed. 1765); 2 *Warrant*, *American Dictionary of the English Language* 904 (Noah Webster ed. 1828).

Writs of bodily assistance for unpaid child support satisfy these definitions. Florida courts issue the writ only after they find a person liable for civil contempt by a preponderance of the evidence—a standard of proof that is *higher* than probable cause, *see United States v. Sokolow*, 490 U.S. 1, 7 (1989). And a writ of bodily attachment is a "warrant," originally defined: it orders the contemnor's

9

arrest and "direct[s]" that he "be brought before the court." Fla. Fam. L.R.P. 12.615(c)(2)(B).

That a writ of bodily attachment is based on civil contempt, as opposed to a crime, makes no difference. Civil warrants were common at the Founding and up through the ratification of the Fourteenth Amendment. *See, e.g.*, *U.S. ex rel. Deimel v. Arnold*, 69 F. 987 (7th Cir. 1895) (writ of capias ad satisfaciendum); *Curry v. Johnson*, 13 R.I. 121 (1880) (writ of replevin); *Semayne's Case*, 77 Eng. Rep. 194 (1604) (writ of replevin); Davies, *supra*, at 585 & n.94 (writ of assistance); Potter Stewart, *The Road to* Mapp v. Ohio *and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search-and-Seizure Cases*, 83 Colum. L. Rev. 1365, 1370 (1983) (writ of assistance). Civil arrest warrants were (and still are) subject to the same standards as criminal arrest warrants. *See West v. Cabell*, 153 U.S. 78, 85–86 (1894).

The closest historical analog to the writ of bodily attachment for unpaid child support is the bench warrant. A bench warrant, or, more traditionally, a "capias," instructs the police to arrest someone to ensure that he appears in court. *See Capias (Capias Ad Respondendum)*, *Black's Law Dictionary* (10th ed. 2014); *Warrant (Bench Warrant)*, *Black's Law Dictionary* (10th ed. 2014). Courts have long issued bench warrants after holding someone in contempt. *See* William Waller Hening, *The New Virginia Justice* 570 (Richmond, Johnson & Warner, 2d

10

ed. 1810); 4 Blackstone, *supra*, at \*281–83. And the Federal Rules of Civil

Procedure today expressly contemplate bench warrants for "civil contempt of a

decree or injunction." Fed. R. Civ. P. 4.1(b).

This Court has held that arrests based on bench warrants satisfy the Fourth

Amendment, *see Simon v. United States*, 644 F.2d 490, 494 (5th Cir. 1981), and

our sister circuits agree with that proposition even when the bench warrant is based

on *civil* contempt. The Seventh Circuit has held that a bench warrant for failure to

pay child support does not present a problem under the Fourth Amendment.

*Armstrong v. Squadrito*, 152 F.3d 564, 569–70 (7th Cir. 1998). And the Second

Circuit has explained why bench warrants satisfy the probable-cause requirement

of the Warrants Clause:

> The decision of the [court] to issue a bench warrant constituted a
> finding made by a neutral magistrate that [the defendant] had failed to
> appear in a pending criminal matter. We recognize that its issuance
> did not amount to a judicial finding of probable cause to arrest in the
> traditional sense—with respect to the bank robberies (i.e., that a crime
> had been committed and that defendant had committed it).
> Nonetheless, the police, armed with the warrant, had authority to find
> and seize [the defendant] anywhere they could find him for his failure
> to appear in court. Thus, the presence of the police . . . was pursuant to
> a direction made by a neutral magistrate. Defendant's rights under the
> Fourth Amendment require no more.

*United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982); *accord United States v.*

*Gooch*, 506 F.3d 1156, 1159 & n.1 (9th Cir. 2007); *People v. Allibalogun*, 727

N.E.2d 633 (Ill. App. Ct. 2000). We agree with our sister circuits. Because bench

11

warrants and writs of bodily attachment for unpaid child support are virtually indistinguishable, the long historical pedigree of the former convinces us that the latter also passes constitutional muster.

At oral argument, Phillips relied heavily on the decision of the Supreme Court in *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011), but that decision does not help him. *Al-Kidd* involved the material-witness statute, which permits judges to issue arrest warrants for witnesses whose testimony is "material in a criminal proceeding" and whose presence cannot be practically secured by a subpoena. 18 U.S.C. § 3144. The majority opinion in *al-Kidd* speculated that material-witness warrants might not be "Warrants" under the Fourth Amendment: "It might be argued, perhaps, that when, in response to the English abuses, the Fourth Amendment said that warrants could only issue 'on probable cause' it meant only probable cause to suspect a violation of law, and not probable cause to believe that the individual named in the warrant was a material witness." 563 U.S. at 743; *see also id.* at 745 (Kennedy, J., concurring). But the Court declined to resolve this issue because al-Kidd had not raised the argument. *See id.* at 736, 740 & n.3 (majority opinion); *id.* at 744 (Kennedy, J., concurring). Because the Court did not address the Warrants Clause in *al-Kidd*, that decision provides us no guidance. Even if the Court had *held* that material-witness warrants are not warrants because they are not based on "probable cause to suspect a violation of law," *id.* at 743

12

(majority opinion), that holding would not affect our decision here. Writs of bodily attachment, like bench warrants, are based on "a violation of law"—namely, civil contempt. Phillips's reliance on *al-Kidd* is misplaced.

We conclude that a writ of bodily attachment for unpaid child support is a warrant for purposes of the Fourth Amendment. With possible exceptions not relevant here, *see* Amar, *supra*, at 762 n.9, 780, an arrest based on a valid warrant is *per se* reasonable. Accordingly, Officer Rodriguez could arrest Phillips based solely on the civil writ of bodily attachment for unpaid child support. And because Officer Rodriguez legally arrested Phillips, he could recover the firearm from Phillips's waistband as part of a search incident to arrest. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174–76 (2016). The district court correctly denied the motion to suppress.

### B. The District Court Correctly Sentenced Phillips as an Armed Career Criminal.

Phillips contends that the district court should not have sentenced him as an armed career criminal, despite his eight prior convictions for possessing cocaine with the intent to sell, Fla. Stat. § 893.13(1)(a). Philips argues that four of his prior convictions do not qualify under the Act because, in 2002, the Florida legislature amended the offense to remove a mens rea element. Phillips argues that two of his prior convictions do not qualify under the Act because adjudication was withheld.

13

And he argues that none of his prior convictions qualify under the Act because they were found by a judge, not a jury.

Phillips concedes that he did not raise these arguments in the district court, but he asks us to review them for plain error. The government responds that we cannot review these arguments at all because Phillips *waived* them, as opposed to merely forfeiting them. The government also contends that all three arguments are foreclosed by precedent. We agree with the government.

We start by clarifying the difference between waiver and forfeiture. "Although jurists often use the words interchangeably," *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004), waiver and forfeiture are "not the same." *Freytag v. Commissioner*, 501 U.S. 868, 895 n.2 (1991) (Scalia, J., concurring in part and concurring in the judgment). "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *Kontrick*, 540 U.S. at 458 n.13 (second alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). When a defendant forfeits an argument in the district court, we can review it for "plain error." Fed. R. Crim. P. 52(b). But when a defendant *waives* an argument in the district court, we cannot review it at all because "no error" occurred in the first place. *Puckett v. United States*, 556 U.S. 129, 138 (2009). "The defendant's waiver is . . . a form of consent that lifts a limitation on government action by satisfying its terms—that is,

14

the right is exercised and honored, not disregarded." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1962 (2015) (Thomas, J., dissenting).

Phillips waived his right to argue that he is not an armed career criminal. Phillips pleaded guilty to violating the Armed Career Criminal Act, and his plea agreement stated that he "understands and acknowledges that the Court . . . must impose a term of imprisonment of no less than the statutory minimum of 15 years." At the sentencing hearing, his lawyer affirmatively asked the district court to sentence him to 15 years under the Act. And when the presentence investigation report stated that Phillips had eight qualifying convictions, Phillips chose not to object. We have held that defendants waived their challenges to their sentences in similar circumstances. *See, e.g.*, *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006); *United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006). Based on his conduct in the district court, Phillips cannot argue on appeal that he is not an armed career criminal.

Even if Phillips had not waived his arguments, all three are foreclosed by precedent. First, we have held that possessing cocaine with the intent to sell is a "serious drug offense" even though the Florida legislature removed a mens rea element in 2002. *See United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014). Second, we have held that a Florida conviction qualifies under the Act even if adjudication was withheld. *See United States v. Santiago*, 601 F.3d 1241, 1245

15

(11th Cir. 2010); *accord Clarke v. United States*, 184 So. 3d 1107, 1113–14 (Fla. 2016). Third, the Supreme Court has held that prior convictions can be found by a judge, instead of a jury. *See Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998). Phillips concedes that these precedents have not been overruled.

## IV. CONCLUSION

We **AFFIRM** Phillips's conviction and sentence.

16