# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1211

_____

United States of America

*Plaintiff - Appellee*

v.

Thomas L. Lynch

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 16, 2016
Filed: February 2, 2017
[Unpublished]

_____

Before RILEY, Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

PER CURIAM.

Thomas L. Lynch was convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and was sentenced by

the district court[1] to 120 months' imprisonment.  Lynch appeals, arguing that he was denied his constitutional right to compel witnesses to testify in his defense and that the government engaged in prosecutorial misconduct in its cross-examination of Lynch and in its rebuttal closing argument.  We affirm.[2]

Lynch and his mother started a plumbing and drain-cleaning business in 2014.  Lynch performed the on-site work, and his mother scheduled appointments, kept the books, and handled other administrative tasks.  When the business proved successful, Lynch hired Brandy Fairbanks to complete the work his mother had been doing.  Fairbanks started working for Lynch in February or March 2015.  Fairbanks, her boyfriend Jimmy Roy, and their young daughter soon moved into Lynch's mother's house, and Roy began working as Lynch's assistant.

By April, Lynch's relationship with Fairbanks and Roy had deteriorated.  Lynch testified that Fairbanks had stopped doing her job.  According to Fairbanks, Lynch repeatedly threatened her with physical harm.  Fairbanks and Roy moved out of Lynch's mother's house and into a motel, where they lived for a month or so.

On May 11, 2015, Fairbanks and Roy were moving out of the motel.  Lynch's longtime girlfriend, Janet Willdermood, was staying at the same motel.  Fairbanks and Roy had seen Lynch's and Willdermood's vehicles parked in the motel lot, but they had not seen or interacted with either of them.  While loading their belongings into the

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

[2]We deny Lynch's motion to supplement the record on appeal and the government's conditional motion to supplement the record on appeal.  See Von Kahl v. United States, 242 F.3d 783, 788 (8th Cir. 2001) (noting "a 'rarely exercised . . . narrow exception' to the general rule that the appellate record is limited to the record made below" (quoting Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63-64 (8th Cir. 1993))).

back of a truck, Fairbanks and Roy saw Lynch through an open motel-room door. According to Fairbanks and Roy, Lynch stood near the doorway looking at them while holding two firearms, the barrels of which he kissed. Roy instructed Fairbanks to get into the truck. Roy drove to the motel office and reported the incident, and the manager called the police. Paul Schnirch, the motel maintenance man, also saw Lynch holding the firearms and kissing the barrels.

Kansas City, Missouri, Police Officers John Mahoney and Andrew Miller responded to the call. Roy told them that he had seen Lynch inside a motel room holding a pistol and a revolver. Roy recounted that when Lynch noticed Roy, Lynch walked to the open door, looked at Roy, and kissed the barrels of the firearms. The officers verified with the motel manager that Lynch was registered for the room Roy had described. They then asked the manager to call Lynch and ask him to come to the front desk. The officers arrested Lynch upon his arrival at the office and thereafter verified that he had been convicted of felonies.

Sergeant Jonathan Rivers arrived at the scene and determined that Lynch's motel room should be secured during the search warrant application process. Rivers and Miller encountered Willldermood in the room. Rivers told her that she would have to leave and that she could take her purse, so long as there were no guns in it. After Willldermood said that there was a gun in her purse, Rivers picked up the purse, took it out of the room, and emptied its contents onto the hood of a car. The purse contained, among other things, a methamphetamine pipe and three loaded firearms—a .380 caliber pistol, a .38 caliber revolver, and a .22 caliber pistol. Willldermood was arrested and methamphetamine was found on her person. Lynch was charged with being a felon in possession of a firearm; Willldermood was charged with being a drug user in possession of a firearm.

Before Lynch's trial, Willldermood's attorney refused to accept service of a subpoena on behalf of her client. Thereafter, Lynch moved for an order directing the

pretrial services officer with supervisory authority over Willdermood to require Willdermood to appear as a witness for Lynch's trial. Lynch indicated that he was trying to avoid paying the fees associated with serving a subpoena because Willdermood had moved to Pierpont, South Dakota, which, according to Lynch, was three hours away from the nearest process server. The district court granted the motion.

During his opening statement, Lynch's attorney set forth his theory of the case, namely, that Lynch was framed by Fairbanks and Roy, who were angry with him, and by maintenance man Schnirch, who associated with Fairbanks and Roy. After telling the jury that Lynch had more than one felony conviction, Lynch's attorney said:

> [Lynch] will tell you that every time he has ever been charged with a criminal offense he's pled guilty, because he was guilty. And he's never fought one of these things or ever gone to trial. [This] is the first case he has ever gone to trial on even though he [has] these prior convictions. He'll tell you he is not guilty of this offense and he'll be pretty adamant about it.

Fairbanks, Roy, Schnirch, Officer Mahoney, Officer Miller, and Sergeant Rivers testified against Lynch. After the government rested and it became clear that Willdermood would not appear for the trial, the district court asked what information Lynch was seeking from Willdermood. Lynch's attorney replied that Willdermood initially said during her post-arrest interview that the three firearms were hers and that Lynch had never seen them. Lynch thus believed that her testimony at trial would establish that he did not possess or even know about the guns. The government explained that Willdermood had later changed her story and said that Lynch had purchased the guns for her. Lynch's attorney explained that he now sought to determine whether Willdermood would assert her Fifth Amendment right against self-incrimination and refuse to testify at Lynch's trial. If she did, Lynch's attorney acknowledged that she would be "an unavailable witness and we are done."

-4-

The court noted that Willdermood had not been served with a subpoena. Willdermood's attorney, who was present in the courtroom, indicated that Willdermood had not received the court's order. The court concluded:

> [Willdermood] is not here. She has not been subpoenaed to be here. The Court is not clear whether an order I sent has reached her. And therefore, I'm going to declare her unavailable. . . . [T]he only question is my plan to move forward. The only alternative I can make is to continue this trial, declare a mistrial and try [to] find her.

After Lynch and his attorney conferred, the attorney stated, "He says let's proceed. We are not asking for a [continuance]."

Lynch then testified in his own defense, stating that he never possessed the firearms found in Willdermood's purse. He testified that he had several criminal convictions and that he had spent twelve years in prison, but that he had since changed his life. When asked why he had pleaded guilty to the earlier offenses, Lynch replied, "Because I did it." On cross-examination, and without objection, the government asked about the sentences Lynch had served for several of his prior convictions, including counts of assaulting a law enforcement officer, receiving stolen property, possessing a controlled substance, and tampering with a motor vehicle. Although five- or seven-year sentences had been imposed for those crimes, Lynch testified that he had served concurrent sentences of one year in a department of corrections drug-treatment center. The court sustained Lynch's objections that a question had been asked and answered and that a question about the difference between state and federal convictions was improper. The government later asked about a letter Lynch had written to a friend, in which Lynch wrote that he was "looking at 15 years to life" for the firearms offense.

During closing argument, Lynch's attorney reiterated that Lynch had pleaded guilty to crimes in the past and that he had no history of lying. During rebuttal, the

government argued that Lynch's letter to his friend showed that Lynch "believe[d] that he is getting 15 years to life in this case. None of this one year rehab stuff."

Lynch first argues that he was denied his right to compel witnesses to testify in his defense, claiming that the district court erred in deeming Willdermood unavailable. The Sixth Amendment confers the right of the accused "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Compulsory Process Clause cannot be invoked, however, "without the prior planning and affirmative conduct of the defendant." Taylor v. Illinois, 484 U.S. 400, 415 (1988). The Supreme Court has said that "[r]outine preparation involves location and interrogation of potential witnesses and the serving of subpoenas on those whose testimony will be offered at trial." Id. at 415-16. Lynch did not serve Willdermood with a subpoena, nor did he ensure that she received the court's order requiring her to appear for his trial. Although the district court suggested that it could declare a mistrial and continue the case, Lynch explicitly elected to proceed and stated that he did not seek a continuance. In light of Lynch's failure to exercise his right to compulsory process, we conclude that he has not shown any violation of his Sixth Amendment rights.

Lynch next argues that the government's questions regarding his prior state convictions and sentences constituted prosecutorial misconduct. Lynch does not dispute that evidence of his prior convictions was admissible impeachment evidence under Rule 609(a)(1) of the Federal Rules of Evidence, but he argues that the government should not have been allowed to cross-examine him regarding the sentences that were imposed for those convictions and the sentences that he actually served for them. He contends that the evidence that he served concurrent one-year sentences at a drug-treatment center—instead of separate five- or seven-year sentences at a prison—for as many as fourteen of his felony convictions was prejudicial because it created a substantial risk that the jury would convict him as punishment for those prior convictions.

Lynch, however, did not object to the government's questions. Had he objected on the basis that the evidence was irrelevant or unfairly prejudicial—arguments that he makes to this court on appeal—the district court would have been called upon to decide whether the questions were proper and whether the evidence was admissible. See Fed. R. Evid. 401, 403, and 609(a)(1)(B). The government maintains that the testimony its questions elicited, along with the evidence that Lynch believed he would serve fifteen years to life if convicted of this offense, rebutted Lynch's testimony that he pleaded guilty whenever he was charged with a crime that he actually committed and that he went to trial in this case only because he was innocent.

Because Lynch did not object, we review only for plain error and find none. See Fed. R. Crim. P. 52(b); United States v. Foreman, 588 F.3d 1159, 1164 (8th Cir. 2009). Lynch's argument that the evidence was irrelevant and prejudicial should have been raised in the district court, along with a contemporaneous objection to the government's questions. To obtain relief on appeal, Lynch must show that there was an error, that is plain, and that affected his substantial rights. Foreman, 588 F.3d at 1164. This he cannot do, for any impropriety in the line of questioning was not so plain that the district court should have *sua sponte* put an end to it. In any event, any harm in allowing the jury to hear the evidence was not so great as to affect his substantial rights, especially in light of the substantial evidence that Lynch possessed the firearms. For the same reasons, we conclude that the government's comments on rebuttal were not plain error.

The judgment is affirmed.

_____