[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14704

_____

D.C. Docket No. 2:15-cv-00697-DAB

ANTHONY L. GREEN,
BROOKE M. WALKER,
EARL E. HOWTON JR.,

Plaintiffs-Appellees,

versus

JACKIE GRAHAM, in her official capacity as Director of the State of Alabama
Personnel Department,
HAL TAYLOR, in his official capacity as Secretary of Law Enforcement for the
Alabama Law Enforcement Agency,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 12, 2018)

Before WILLIAM PRYOR, MARTIN, and BALDOCK,[*] Circuit Judges.

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by
designation.

WILLIAM PRYOR, Circuit Judge:

This interlocutory appeal presents questions about state sovereign immunity and related principles of federal jurisdiction. Anthony Green, Brooke Walker, and Earl Howton Jr. petitioned a state court for injunctive and declaratory relief entitling them to an enhanced status in the retirement system for Alabama state employees. The state officials named as defendants removed the action to federal court, which waived their immunity from suit in a federal forum, *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002), but did not necessarily waive all sovereign-immunity-based defenses, *see Stroud v. McIntosh*, 722 F.3d 1294 (11th Cir. 2013). The district court ruled that the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), made sovereign immunity inapplicable. We hold that the officials have either waived or forfeited any immunity from suit and that we lack jurisdiction to consider their immunity from liability on interlocutory appeal.

## I. BACKGROUND

Green, Walker, and Howton are employees of the Alabama Law Enforcement Agency and participants in the Employees' Retirement System of Alabama. The Retirement System administers different retirement plans for different groups of state employees. The most generous retirement status, "state policeman," applies to employees "approved by the State Personnel Board to perform the duties of highway patrolman or a beverage control agent or a crime

2

investigator." Ala. Code § 36-27-1(23). The next most generous status, "law enforcement," applies to correctional officers, firefighters, and law-enforcement officers not eligible for state-policeman status. *See id.* § 36-27-59. All other employees in the Retirement System fall in the residual "state employee" category.

Although the plaintiffs' retirement status is law enforcement, they allege they are entitled to participate in the state-policeman plan based on the statutory definition, and they allege that they were hired with the understanding that they would enjoy state-policeman retirement status. They have unsuccessfully sought a state-policeman upgrade for years.

In September 2015, the plaintiffs filed a complaint in the Circuit Court of Montgomery County against Spencer Collier, then secretary of the Agency, and Dr. David Bronner, chief executive officer of the Retirement Systems of Alabama, both in their official capacity. The complaint alleged that the plaintiffs' job duties qualified them as "state policemen" because they "perform[ed] the duties of . . . a crime investigator." *Id.* § 36-27-1(23).  They asserted a federal equal-protection claim for declaratory and injunctive relief, 42 U.S.C. § 1983, and a parallel state-law claim. With Bronner's consent, Collier removed the case to the district court. The plaintiffs then voluntarily dismissed their claims against Bronner based on assurances that the Retirement System would honor any court order in their favor.

3

The plaintiffs later amended their complaint.  The amended complaint joined Jackie Graham, head of the State Personnel Department, as a defendant.  It also added federal and state due-process claims to the earlier-stated equal-protection claims.  The district court later substituted Collier with Stan Stabler, Collier's successor as secretary of the Agency.

Graham and Stabler moved for summary judgment. Among other defenses, they argued that state sovereign immunity barred the plaintiffs' claims against them. Before the district court ruled on the motion, it substituted Stabler with Hal Taylor, Stabler's successor as secretary of the Agency.

The district court denied Graham and Taylor's motion for summary judgment. It concluded that plaintiffs' claims fall within the *Ex parte Young* exception to state sovereign immunity for prospective relief to redress ongoing violations of constitutional rights. Although the district court discussed the effect of removal of an action on state sovereign immunity, it did not base its ruling on that ground. Nor did the district court address the officials' argument that *Ex parte Young* cannot dispel immunity from the plaintiffs' state-law claims, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

## II. JURISDICTION AND STANDARD OF REVIEW

Although we ordinarily have jurisdiction to review only "final decisions of the district courts," 28 U.S.C. § 1291, the denial of state sovereign immunity by a

4

district court is immediately appealable under the collateral-order doctrine. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993). We review a ruling on state sovereign immunity *de novo*. *See Stanley v. Israel*, 843 F.3d 920, 923 (11th Cir. 2016). We also review a ruling on a motion for summary judgment *de novo*, "viewing all of the facts in the record in the light most favorable to the non-movant. Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted).

## III. DISCUSSION

We divide our discussion in four parts. First, we explain that we have jurisdiction to consider only Graham and Taylor's alleged immunity from suit, not their immunity from liability. Second, we explain that both Graham and Taylor have waived their immunity from suit in a federal forum. Third, we explain why we decline to consider Graham and Taylor's contention—raised for the first time at oral argument—that they retain immunity from suit under the Alabama Constitution despite their waiver of federal-forum immunity. Fourth, we explain that we lack jurisdiction to consider any other issues.

### A. We Lack Jurisdiction to Consider Graham and Taylor's Immunity from Liability.

Graham and Taylor argue that we should reverse based on their immunity from liability, but our jurisdiction in this interlocutory appeal is limited to Graham

5

and Taylor's potential immunity from suit. This conclusion follows from the principles of the collateral-order doctrine. It also comports with our and our sister circuits' consistent practice.

In *Stroud*, we explained that "sovereign immunity is a divisible concept," and we particularly distinguished a state's "immunity from suit in federal courts" from its sovereign "immunity from liability." 722 F.3d at 1301. Because "states can independently relinquish" parts of their sovereign immunity "without affecting others," *id.*, we concluded that "a state can waive its forum immunity but retain other aspects of sovereign immunity, including immunity from liability," *id.* at 1303. Accordingly, we held that the removal of a suit against the State of Alabama to federal court waived immunity from suit in a federal forum but did not waive immunity from liability. *See id.* at 1302–03.

Because *Stroud* was not an interlocutory appeal, we did not ask whether a denial of any one of the "multiple aspects" of state sovereign immunity, *id.* at 1301, is always immediately appealable, but the basic principles of the collateral-order doctrine make the answer to that question straightforward. As the Supreme Court has explained, denials of sovereign immunity are immediately appealable only because sovereign immunity includes "an immunity from suit," the "value" of which "is for the most part lost as litigation proceeds past motion practice." *P.R.*

6

*Aqueduct*, 506 U.S. at 144, 145. It follows that interlocutory review of a denial of immunity from liability alone is not available.

Even before *Stroud* expressly acknowledged the divisibility of state sovereign immunity, we recognized that an immediate appeal from a denial of an immunity under state law is available only if the immunity "is an immunity from suit rather than simply a defense to substantive liability." *Griesel v. Hamlin*, 963 F.2d 338, 340 (11th Cir. 1992). For example, we have held that the denial of a sovereign-immunity defense that arises under Georgia or Alabama law is immediately appealable because those states provide for immunity from suit as a matter of state law. *See id.* (Georgia); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (Alabama). But we have held that we cannot consider an immediate appeal from the denial of a sovereign-immunity defense under Florida law, because Florida sovereign immunity is an immunity only from liability. *CSX Transp., Inc. v. Kissimmee Util. Auth.*, 153 F.3d 1283, 1286 (11th Cir. 1998); *see also Parker v. Am. Traffic Solutions, Inc.*, 835 F.3d 1363, 1368–70 (11th Cir. 2016) (reaffirming *CSX Transportation*). In considering state-law immunities of all kinds, our sister circuits have also consistently held "that the availability of an [immediate] appeal depends on whether, under state law, the immunity functions as an immunity from suit or only as a defense to liability." *Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011) (emphasis omitted) (collecting cases).

B. *Graham and Taylor Have Waived Their Immunity from Suit in a Federal Forum.*

We now consider whether Graham and Taylor can assert any immunity from suit. In *Stroud*, extending the reasoning of *Lapides*, we held that a defendant entitled to state sovereign immunity—that is, a state, an arm of the state, or a state official—waives its immunity from suit in a federal forum whenever it invokes federal jurisdiction by removing a suit against it to federal court. 722 F.3d at 1302. In this appeal, Graham and Taylor are not the state officials who removed the suit to federal court, and only Taylor's predecessor in office was a defendant at the time of removal.

We have never addressed the question whether removal of an action waives the forum immunity of a later-joined state official. "Longstanding principles of federal law oblige us to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction," *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1542 (11th Cir. 1993), and the Supreme Court has long held that state sovereign immunity "partakes of the nature of a jurisdictional bar" in certain respects, *Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *see also Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 467 (1945) (explaining that "[t]he Eleventh Amendment . . . sets forth an explicit limitation on federal judicial power"), *partially overruled on other grounds by Lapides*, 535 U.S. at 623. For these reasons, we asked the parties to be prepared at oral argument to discuss

8

whether the removal of the suit by the original defendants waived any federal-forum immunity that Graham could assert.

The question concerns the structure of state sovereign immunity. When multiple state entities are joined as defendants in an action, does each of them possess an independent quantum of the state's overall sovereign immunity, so that one state defendant can waive its immunity without affecting the immunity of the others? *See Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 896 F. Supp. 1204, 1207 (M.D. Fla. 1995) ("Each state agency is a separate defendant in this action, and each may choose whether to remove the cloak of Eleventh Amendment immunity."). Or is the state's immunity unitary and indivisible, so that a waiver by one state defendant waives it for all? *See N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 923 F. Supp. 651, 664 (D.N.J. 1995) ("The State colleges and hospitals cannot in one breath claim to be . . . entitled to share in all of the State's immunities, and in the next breath argue . . . that they are not the same State which [waived federal-forum immunity by] fil[ing] the suit.").

We conclude that the removal of the action waived Graham's forum immunity because her forum immunity is none other than that of the State of Alabama. The principles of state sovereign immunity prohibit "not only actions in which a State is actually named as a defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519

9

U.S. 425, 429 (1997). Specifically, the prohibition extends to suits against state agents and entities in which "*the state is the real, substantial party in interest* and is entitled to invoke *its* sovereign immunity from suit even though individual officials [or entities] are nominal defendants." *Id.* (emphases added) (quoting *Ford Motor Co.*, 323 U.S. at 464).

The Supreme Court has consistently recognized that sovereign immunity belongs to the state, and only derivatively to state entities and state officials. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 ("Sovereign immunity is the privilege *of the sovereign* not to be sued without *its* consent." (emphases added)); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("We have long recognized that a State's sovereign immunity is 'a *personal* privilege which *it* may waive at pleasure.'" (emphases added) (quoting *Clark v. Barnard*, 108 U.S. 436 (1883))). Indeed, when the regents of the University System of Georgia "joined in removing the case" brought against them by Paul Lapides, the Supreme Court took it for granted that removal was "the State's act." *Lapides*, 535 U.S. at 616; *see also id.* at 620 (explaining that "*the State* was brought involuntarily into this case as a defendant" when the officials were sued, "[b]ut *the State* then voluntarily agreed to remove the case to federal court" (emphases added)).

10

In *Stroud*, we explained that removal waives a state's forum immunity from claims first joined after removal, *see* 722 F.3d at 1302 n.3, and the same logic applies to defendants first joined after removal. "Once [federal] jurisdiction is invoked by removal, the federal court has jurisdiction over the entire *case*—not simply those claims [or defendants] that the complaint alleged [or named] at the time of removal." *Id.* As long as the new state defendant can properly be joined to the "case," the federal court has jurisdiction over that defendant. *See Gloucester*, 923 F. Supp. at 664–65 (holding that the claims against the state entities asserting sovereign immunity were part of the same case for which the state had invoked federal jurisdiction).

In this appeal, were Graham to contest that she is subject to suit in a federal forum, it would be one and the same party in interest—the State of Alabama—that both waived and asserted forum immunity in one and the same case. We reject that contradiction. The removal of the action by the state through Collier and Bronner waived Graham's forum immunity.

In the alternative, Graham unambiguously waived her federal-forum immunity through counsel at oral argument. Oral Argument at 8:00–12. And Taylor's forum immunity was waived when his predecessor in office removed the action to federal court. Suits against state officials in their official capacity are "only another way of pleading an action against an entity of which an officer is an

11

agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Indeed, when officials sued in this capacity . . . leave office, their successors automatically assume their roles in the litigation." *Id.* We conclude that neither Graham nor Taylor is immune from suit in a federal forum.

### C.  Graham and Taylor's New Argument for State-Law Immunity from Suit Is Forfeited.

Because our jurisdiction is limited to immunity from suit and Graham and Taylor have waived their immunity from suit in a federal forum, we must consider whether we have jurisdiction over any remaining issue of immunity from suit. If state sovereign immunity comprises only two elements—immunity from suit in a federal forum and immunity from liability—then the waiver of Graham and Taylor's forum immunity means that our jurisdiction is exhausted. But, at oral argument, Graham and Taylor proposed for the first time a theory of sovereign immunity that would enable them to maintain, and us to hold, that they are immune from suit despite the waiver of their federal-forum immunity.

Under Graham and Taylor's belated theory, sovereign immunity comprises not two but three distinct elements. First, there is the limit on the federal judicial power that the Eleventh Amendment "recognizes" but does not create: "that states ordinarily enjoy sovereign immunity from suits in federal court." *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014). Second, distinct from this limit on the judicial power of the United States, there is, Graham

12

and Taylor contend, the state's immunity from suit under *state* law. Third, there is the state's immunity from liability, which is also a creature of state law. Under Graham and Taylor's theory, both the second and third elements are embodied in Article I, Section 14 of the state constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14; *see also Tinney*, 77 F.3d at 382–83 (holding that section 14 immunizes the state from both suit and liability).

The Fifth Circuit rejected the theory of a distinct immunity from suit under state law in *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 250–55 (5th Cir. 2005), a decision we cited with approval in *Stroud*, *see* 722 F.3d at 1300–01, 1304, but we need not consider whether *Meyers* is correct or the extent to which *Stroud* adopted its reasoning. "[W]e do not consider [arguments] not raised in a party's initial brief and made for the first time at oral argument." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007). This rule is but an application of the general principle that a party "who fails to make a specific objection or argument in the district court forfeits that objection or argument." *United States v. Davis*, 875 F.3d 592, 601 n.2 (11th Cir. 2017) (alterations adopted and internal quotation marks omitted) (quoting *United States v. Weeks*, 711 F.3d 1255, 1261 (11th Cir. 2013)); *see also United States v. Phillips*, 834 F.3d 1176, 1183 (11th Cir.

13

2016) (explaining the difference between waiver, which is the intentional abandonment of a right, and forfeiture, which is the failure to timely assert a right).

True, "the Eleventh Amendment . . . can be raised at any stage of the proceedings." *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998). As the Supreme Court has explained time and time again, the quasi-jurisdictional character of state sovereign immunity makes it inappropriate for courts to apply the ordinary rules of forfeiture. *See id.* ("[T]he Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings . . . ."); *Pennhurst*, 465 U.S. at 99 n.8 ("The limitation deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding."); *Edelman*, 415 U.S. at 678 ("[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."); *Ford Motor Co.*, 323 U.S. at 467 ("The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under the Amendment in this case even though urged for the first time in this Court."); *see also Stroud*, 722 F.3d at 1302 n.3 ("Forum immunity is a jurisdictional immunity that shields a state from suit in federal court."). But—by its own terms—Graham and Taylor's new argument does not depend on "the Eleventh Amendment," or, to speak more accurately, the

14

"constitutional principle" for which "'Eleventh Amendment immunity' . . . is convenient shorthand but something of a misnomer," *Alden v. Maine*, 527 U.S. 706, 713, 729 (1999).

We deem Graham and Taylor's new argument forfeited. If a separate state-law immunity from suit were to exist, it would not be jurisdictional. A defense rooted in state law cannot define the jurisdiction of the federal courts, which derives from the Constitution and acts of Congress. *See* U.S. Const. Art III, §§ 1–2 (vesting "[t]he judicial Power of the United States" in "one supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish," and providing that "[t]he judicial Power shall extend" to specified "Cases" and "Controversies"); *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850) (explaining that Congress is responsible for creating the inferior federal courts and defining their jurisdiction). "[I]n delineating the boundaries of its jurisdiction and powers," a federal court "looks to the U.S. Constitution, federal statutes, U.S Supreme Court precedent, and the precedent of the relevant federal circuit court—but not to state statutes or state precedents." Bryan A. Garner et al., *The Law of Judicial Precedent*, § 65, at 551 (2016). So, under ordinary forfeiture principles, we exercise our discretion not to consider Graham and Taylor's belated defense of state-law immunity from suit.

15

*D. We Have No Jurisdiction to Consider Graham and Taylor's Other Arguments.*

Because Graham and Taylor have either waived or forfeited any immunities from suit, we lack interlocutory jurisdiction to consider their other arguments. They contend that removal of the action did not waive their immunity from liability, but we have explained why we cannot consider that argument on interlocutory appeal.

Graham and Taylor also argue that the district court erred in three ways when it held that *Ex parte Young* applied to the plaintiffs' claims. First, they argue that the plaintiffs' claims do not fit within the *Ex parte Young* exception because the relief they seek is retrospective, not prospective. Second, they argue that the *Ex parte Young* exception cannot apply because Graham and Taylor lack the authority to classify the plaintiffs as State Policeman employees. Based on the text of the statute that defines a "state policeman," Ala. Code § 36-27-1(23), they suggest that the plaintiffs should sue the members of the Personnel Board instead. Third, they point out that the *Ex parte Young* exception does not apply to state-law claims. *See Pennhurst*, 465 U.S. at 106.

Because no immunity from suit is at stake, we lack jurisdiction to adjudicate these arguments. The plaintiffs—both in their appellate brief and at oral argument—have unambiguously disclaimed any relief that is not prospective, and we trust that the district court will hold them to that express waiver as this case

16

proceeds. We also trust that the district court will manage the case to ensure that all parties necessary to effectuate prospective relief are joined to the action and will carefully respect the limits of the *Ex parte Young* exception.

## IV. CONCLUSION

We **AFFIRM** the denial of immunity from suit to Graham and Taylor.

MARTIN, Circuit Judge, concurring:

This case presents technical questions about sovereign immunity. I join the majority opinion because I agree we have jurisdiction to review the denial of what the majority calls "immunity from suit" but lack jurisdiction to consider "immunity from liability." Maj. Op. at 2. Because I've noticed that those terms get used differently in different contexts, I write separately to explain my understanding of the way we use them here.

As I understand it, "immunity from suit" means the same thing as "forum immunity." Indeed, I read the majority opinion to use these terms interchangeably here. Maj. Op. at 6, 8; see also Stroud v. McIntosh, 722 F.3d 1294, 1303 (11th Cir. 2013). Forum immunity is a shorthand term for the well-established principle that a state cannot be sued in federal court without its consent. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54–55, 116 S. Ct. 1114, 1122–23 (1996); Stroud, 722 F.3d at 1302 n.3. Forum immunity is jurisdictional in nature. See Seminole Tribe, 517 U.S. at 54–55, 116 S. Ct. at 1122–23; Stroud, 722 F.3d at 1302 n.3. When a state or an arm of the state removes a case from state court to federal court, the state or arm of the state consents to federal jurisdiction and thus waives forum immunity. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 616, 122 S. Ct. 1640, 1642 (2002). I concur in the majority's holding that the removal of this case by the original state defendants waived forum immunity for later-joined

18

state defendants.  Maj. Op. at 8–12.  The District Court thus has jurisdiction to adjudicate this case.

Next, I understand what the majority calls "immunity from liability" to be in the nature of an affirmative defense.  See Meyers ex rel. Benzing v. Texas, 410 F.3d 236, 254–55 (5th Cir. 2005); see also Stroud, 722 F.3d at 1303 (characterizing "immunity from liability" as a defense to a federal age discrimination claim).  An immunity defense does not implicate a federal district court's jurisdiction.  Rather, as with any affirmative defense, the question goes to the merits of whether the state can be held liable for the alleged violation.  This court has said: waiving forum immunity does not preclude a state from asserting any and all immunity defenses to a claim once that claim proceeds in federal court.  See id.  This waiver of immunity from suit in federal court merely allows a U.S. District Court to take jurisdiction and adjudicate the case, including any immunity defense.  The majority is right, here again, that we lack jurisdiction to review the denial of an immunity defense on interlocutory appeal, just as we would lack interlocutory jurisdiction to review the denial of any affirmative defense.  Maj. Op. at 7.

I concur in the majority opinion.

19