[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10943

Non-Argument Calendar

_____

LYNNE M. GIBSON,
Ph.D.
f.k.a. Lynne M. Gleiber,

                                        Plaintiff-Appellant,

*versus*

JETBLUE AIRWAYS CORP.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:18-cv-01742-WWB-EJK

_____

Before LAGOA, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Lynne Gibson appeals the district court's grant of summary judgment in favor of JetBlue Airways Corp. ("JetBlue") on her claims of race- and age-discrimination under 42 U.S.C. § 1981, the Florida Civil Rights Act ("FCRA"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). For the reasons discussed below, we affirm the district court's order.

## I.    FACTUAL AND PROCEDURAL HISTORY

In June 2015, JetBlue, a domestic and international airline carrier, hired Gibson, a Black female born in 1966, as a Senior Analyst on its Assessment, Measurement, and Evaluation ("AME") team and, according to Gibson, as a supervisor to junior-level analysts. In offering her the position, JetBlue's Manager of AME passed on two other applicants for the job—one who was white and another who was under the age of forty. Six JetBlue employees comprised the AME team: Therese Schmidt, the AME Manager who hired Gibson; Gibson, the sole senior analyst; Jennifer

Carlson, Supervisor for Learning Analytics; and Lauren Kramer, Jessica Thompson, and Curran Merrigan, three junior-level analysts. At the time of her hiring, Gibson was a highly accomplished academic, but she had never previously worked in the corporate world.

As Senior Analyst, AME anticipated Gibson's role to be independent and with limited supervision. She was primarily responsible for developing curriculum on the effective use of data for JetBlue University, the company-run training school for pilots, flight crew, and other support staff. Early in her employment, however, she showed an inability to be self-sufficient and to make the progress expected by the AME team.

The record evidence includes a substantial amount of documented deficient job-performance reviews by Schmidt and JetBlue's Regional Manager of Crew Relations, Robin King. When Schmidt presented these issues at Gibson's ninety-day performance review, Gibson appeared surprised and unaware of these issues. Shortly thereafter, Schmidt and Gibson met again to discuss her first few assignments, her failure to demonstrate the requisite and necessary skills for the job, her alleged lack of respect toward other AME team members, and her apparent unwillingness to take constructive criticism. Schmidt memorialized the substance of the meeting by way of email, writing that she expected Gibson to improve her performance and providing Gibson examples of the deficient performance, with an opportunity to comment on those examples. In this email, Schmidt also assigned Gibson an "Inflight

and Flight Key Driver Analysis" project and asked for it to be completed within two weeks.  Gibson acknowledged receipt of the email, admitted some errors in her work, and confirmed her understanding of the assignment.  Despite two follow-up reminders from Schmidt, including one on of the morning of the due date, Gibson did not submit the assignment on time.

From late-October 2015 through mid-January 2016,[1] Gibson's job performance with AME was marred by her failure to adequately complete assignments, if at all, intervention meetings with Schmidt to discuss her deficiencies, and  responses and follow-ups that AME understood as excuses.  In mid-December 2015, Gibson was assigned another analysis project for Jeff Kruse, JetBlue's Director of Inflight and System Operations Training, concerning why students were failing JetBlue's training program, where in the program they were failing, and how to solve these issues.  Over the course of the month, Gibson sought direction from several individuals—so many, in fact, that Kruse and others expressed concern to Schmidt about the nature and frequency of her questions about the assignment.  Gibson then presented her analysis and recommendations on January 11, 2016, to Schmidt, Kruse, and other members of the team.  Schmidt found the presentation exhibited the same deficiencies that she had identified for the past several months with Gibson's work, i.e., a lack of attention to detail, difficulty

---

[1] According to Gibson, she took a medical leave of absence from November 5, 2015, through December 2, 2015.

presenting data visualization, and "a lack of advanced critical thinking and analytical skills."

After missing deadlines or submitting unsatisfactory work on roughly four major projects over the course of six months, the Kruse project appears to have been Schmidt's and King's breaking point. Schmidt suspended Gibson's employment on January 14, 2016. Twelve days later, Schmidt and King—with the approval of Schmidt's supervisor—terminated Gibson's employment. Gibson formally requested a post-termination review, which JetBlue performed. A JetBlue Regional Field Generalist reviewed and upheld Gibson's termination, finding that she had a pattern of shifting blame to others and making excuses, among other things.

On November 13, 2015, Gibson filed a charge of discrimination with the Equal Employment Opportunity Commission pursuant to the ADEA, which issued Gibson a notice of right to sue on July 16, 2018. On October 15, 2018, Gibson filed this action in district court, alleging race- and age-discrimination under 42 U.S.C. § 1981, FCRA, and the ADEA. Gibson alleged that, despite what was supposed to be a supervisory position, AME never allowed her to supervise anyone—namely, the younger, all-white team of analysts. She also contended that JetBlue gave her assignments with "vague instructions, missing data[,] and inappropriate analytical tools" and that, despite these disadvantages, she produced what they had asked her to produce.

Following some preliminary motions and discovery, JetBlue moved for summary judgment, arguing that there was no genuine

dispute of material fact that AME terminated Gibson for a legitimate, nondiscriminatory reason based solely on her performance and failure to meet AME's expectations.  First, Jet Blue argued that Gibson was not qualified for the Senior Analyst position, as she lacked some of the minimum and preferred experience qualifications.  Second, it argued that Gibson had not identified any similarly situated comparators, which the law requires for discrimination claims.

Gibson opposed JetBlue's motion for summary judgment, arguing that "a convincing mosaic of circumstantial evidence" established that JetBlue's stated reasons for terminating her were pretextual.  Moreover, she asserted that Schmidt chose her over the other two candidates simply to hire someone with her credentials and sabotaged her by rejecting her work.

The district court granted JetBlue's motion for summary judgment.  The district court found that Gibson could not present evidence of "similarly situated comparators" against which JetBlue's treatment of her could be compared.  The district court explained that the offered comparators—the other AME team analysts—were not, for the most part, supervised by the same individual and had "different job expectations and duties stemming from their junior roles and did not share [her] educational and employment history," as Gibson was the only Senior Analyst.  The district court also found that, although Gibson might have met the educational and experience minimums, she failed to meet JetBlue's minimum job performance expectations and did not present evidence

to the contrary. The district court explained that Gibson submitted assignments were late, incomplete, full of errors, and that Gibson failed to follow Schmidt's instructions. Finally, the district court found that she had not demonstrated the requisite showing for it to find "a convincing mosaic of circumstantial evidence" of discrimination. The district court explained that JetBlue "was unmistakably dissatisfied with [her] poor performance" and that Gibson, while self-assessing herself as a "good employee," had not offered any evidence that her poor performance evaluations were the result of a discriminatory animus. The district court entered judgment in JetBlue's favor. Gibson timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant. *Alvarez*, 610 F.3d at 1263–64.

## III.    ANALYSIS

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Group, Inc.*, 168

F.3d 468, 472 (11th Cir. 1999); 42 U.S.C. § 1981. "The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context." *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

The plaintiff can establish a claim of intentional race discrimination through direct evidence or circumstantial evidence. *Alvarez*, 610 F.3d at 1264. Where a plaintiff supports her § 1981 discrimination claim using circumstantial evidence, we generally apply the *McDonnell Douglas* burden-shifting framework. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1181 (11th Cir. 2010). Under this framework, the plaintiff bears the initial burden of presenting evidence sufficient to establish a *prima facie* case of race discrimination by showing that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) her employer treated similarly situated employees outside the protected class more favorably. *Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc) ("Lewis I").

If the employee establishes a prima facie case of discrimination, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision. *Alvarez*, 610 F. 3d at 1264. "If such reasons are identified, [the employee] then bears the ultimate burden of proving them to be a pretext for" discrimination. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). In a case involving an employee discharged for

violating a work rule, pretext may be established when the employee "submits evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Id.* at 1363.

The ADEA, in turn, prohibits employers from firing employees who are 40 years or older based on their age. *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015); *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014) (explaining that the ADEA prohibits certain adverse actions by an employer against an employee based on that employee's age). The *McDonnell Douglas* framework applies to ADEA claims based on circumstantial evidence. *Id.* Additionally, the FCRA makes it unlawful for employers to discriminate on the basis of sex or age. *See* Fla. Stat. §§ 760.01(b), 760.10. Claims under the FCRA are analyzed under the same framework as claims brought under Title VII or the ADEA. *See, e.g., Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007) (noting that Florida courts apply Title VII caselaw when interpreting the FCRA); *Mazzeo*, 746 F.3d at 1266 (noting that age-related discrimination actions under the FCRA are analyzed under the same frameworks as the ADEA).

Gibson argues that the district court erred in finding that she failed to state a prima facie case of age discrimination under the ADEA. Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action." *Liebman*, 808 F.3d at 1298 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). A plaintiff may prove an ADEA claim through direct or circumstantial evidence. *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010).

For an ADEA claim based on circumstantial evidence, such as the claim before us, we apply the framework established in *McDonnell Douglas*. *See Liebman*, 808 F.3d at 1298. Under that framework, a plaintiff must establish a prima facie case of age discrimination, i.e., "prove that he or she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). Of relevance here, the plaintiff must show that she "was treated differently from another 'similarly situated' individual—in court-speak, a 'comparator.'" *Lewis*, 918 F.3d at 1217 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258–59 (1981)). For comparators to be similarly situated, they need not be "nearly identical," but rather, "similarly situated in all material respects." *Id.* at 1218.

Aside from the *McDonnell Douglas* framework, however, an employee can still survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). A convincing mosaic may be shown by pointing to "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("Lewis II") (quotation marks omitted and alteration in original).

On appeal, Gibson argues that the district court erred in finding that she failed to establish by a preponderance of the evidence the third and fourth elements for a prima facie case of discrimination, i.e., that she was qualified for the job for which JetBlue hired her and that JetBlue treated similarly situated employees more favorably. She further argues that the district court erred in finding that she failed to present sufficient evidence for a reasonable jury to determine that JetBlue's reasons for termination were merely pretext. We address these arguments in turn.

12                    Opinion of the Court                    20-10943

### A.  Gibson's Qualifications for the Position[2]

Whether a terminated employee was qualified for a position is assessed through an objective analysis.  *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013).  The focus is ordinarily on the plaintiff's "skills and background to determine if they were qualified for a particular position."  *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1227 (11th Cir. 1993).  It is this skills-and-background criterion on which Gibson relies exclusively.  Gibson holds a Ph.D. in political science and had prior work experience in conducting educational research and data analytics.

Gibson, however, contends the district court should have stopped the analysis there and found her to be qualified for purpose of making a prima facie discrimination case.  To that extent, she argues that the district court's conclusion constitutes error as a matter of law because it considered evidence that she was unqualified based on her job-performance evaluations completed by Schmidt and King.  These evaluations, in her view, are subjective

---

[2] JetBlue contends Gibson did not raise this issue before the district court.  *See Green v. Graham*, 906 F.3d 955, 963 (11th Cir. 2018) ("[A] party 'who fails to make a specific objection or argument in the district court forfeits that objection or argument.'" (quoting *United States v. Davis*, 875 F.3d 592, 601 n.2 (11th Cir. 2017))).  While JetBlue is correct that Gibson did not address this in her opposition brief to JetBlue's motion for summary judgment, the district court *did* address it in its order.  Further, it is one of the expressly articulated theories on which she filed this action against JetBlue.  Because it was disputed between the parties and the district explicitly addressed it in its order, we consider the issue properly before us on appeal.

20-10943            Opinion of the Court                13

in nature and should not be considered by a court at the prima facie stage of an unlawful discrimination claim. We agree with Gibson that, as a general principle, subjective job-performance evaluations should not be considered at the prima facie stage. *See Walker v. Mortham*, 158 F.3d 1177, 1192–93 (11th Cir. 1998). We disagree, however, that *all* job-performance evaluations are inherently or *per se* subjective. Evaluations, like those here, which are based on objective criteria such as repeated failures to meet deadlines are not subjective in nature.

Gibson's reliance on *Vessels v. Atlanta Independent School System*, 408 F.3d 763 (11th Cir. 2005), is misplaced. In *Vessels*, this Court stated that a plaintiff "need only show that he or she satisfied an employer's objective qualifications" and that "[a] contrary rule, under which an employer's subjective evaluation could defeat the plaintiff's initial prima facie case, cannot be squared with the structure and purpose of the *McDonnell Douglas* framework." *Id.* at 769. We determined that the employer could not present evidence at the prima facie stage that the plaintiff was not qualified for the position "because he lacked the leadership style they preferred." *Id.* at 768. That stated reason was, by its very nature, subjective and contrary to the *McDonnell Douglas* framework if it were to be considered at the prima facie stage. *See id.* But *Vessels* does not hold that job-performance evaluations are *per se* subjective and therefore improper at the prima facie stage. Indeed, as we explained in *Vessels*, "we have made clear that the prima facie case is designed to include only evidence that is *objectively verifiable* and either

easily obtainable or within the plaintiff's possession." *Id.* at 769 (emphasis in original).

In her argument, Gibson conflates evidence of the employee's failure to meet the employer's subjective criteria—which cannot be considered at the prima facie stage—with evidence of the employee's failure to meet the employer's objective and measurable criteria—which can be considered at the prima facie stage. Here, the job-performance evaluations relied on by the district court contained objectively verifiable criteria—principally, Gibson's failure to submit her assignments on time and without typographic errors and mathematical miscalculations. Thus, we conclude that the district court's consideration of Schmidt's and King's evaluations of Gibson's job performance was not improper.

However, while it was not error for the district court to consider the evaluations, it was error to conclude that they established that Gibson was not qualified for the position at the summary-judgment stage. Because JetBlue was the party moving for summary judgment on Gibson's claims, the burden was on JetBlue to show "an *absence* of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (emphasis added). These evaluations, at best, created a disputed issue of material fact. Gibson produced sufficient evidence from a skills-and-background perspective to satisfy the qualifications prima facia element. JetBlue's objective job-performance evaluations did not defeat Gibson's evidence; they simply disputed it. Because it appears the district court disregarded Gibson's skills-and-background evidence

and considered only JetBlue's job-performance-evaluations evidence, we conclude that it was error. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("[Courts must] consider all evidence in the record when reviewing a motion for summary judgment . . . and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986))).

Because under the *McDonnell Douglas* framework, a plaintiff must establish all four prima facie elements, we now turn to whether the district court erred in finding that Gibson failed to meet the fourth element—similarly situated comparators.

### B.  Similarly Situated Comparators

To establish the fourth element of a prima facie case for discrimination under *McDonnell Douglas*, the plaintiff must come forward with evidence of a comparator—someone who is "similarly situated in all material respects." *Lewis*, 918 F.3d at 1228. They must be "sufficiently similar, in an objective sense, [such] that they 'cannot reasonably be distinguished.'" *Id.* (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015)). This requires a case-by-case analysis. *Id.* at 1227.

Here, Gibson offered as comparators three junior analysts. While Gibson need not demonstrate that the comparators are "identical" or perform identical job functions, *see id.*, we agree with the district court that the three junior-level analysts are simply

too dissimilar to reach any reasonable inference of discrimination against Gibson. *See id.* at 1227–28 (identifying one of the various factors in determining similarly situated comparators "will have been subject to the same employment policy, guideline, or rule as the plaintiff"). Perhaps most importantly, they did not share the same supervisor; they were supervised by Carlson, not Schmidt. *See id.* ("[A] similarly situated comparator . . . will ordinarily . . . have been under the jurisdiction of the same supervisor as the plaintiff."); *see also Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination.").

Notwithstanding identification of the junior-level analysts, we read Gibson's brief as effectively conceding her inability to bring forward evidence of a similarly situated comparator. Accordingly, we conclude that Gibson did not, and cannot, identify a similarly situated comparator. Her discrimination claims therefore fail under the *McDonnell Douglas* framework. However, our analysis does not end there. Although a plaintiff's failure to establish sufficient comparators ordinarily precludes the establishment of a prima facie case, it does not automatically mean that her claim must fail as she may still survive summary judgment under the alternate "convincing mosaic of circumstantial evidence" theory.

## C.  "Convincing Mosaic of Circumstantial Evidence"

Even though Gibson cannot establish the fourth element for a prima facie case of discrimination, "establishing the elements of

the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.  Accordingly, the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case."  *Smith*, 644 F.3d at 1328.  In *Rioux v. City of Atlanta*, 520 F.3d 1269, 1277 (11th Cir. 2008), this Court held that, despite a plaintiff's inability to present evidence of a comparator, he had satisfied each of the other three prima facie elements and had "also come forward with 'other evidence of discrimination.'"  We have described this "other evidence of discrimination" as "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Smith*, 644 F.3d at 1328 (quoting *Silverman*, 637 F.3d at 734).  A plaintiff may establish a "convincing mosaic" by presenting evidence that demonstrates suspicious timing, ambiguous statements, systemically better treatment of similarly situated employees, other information from which discriminatory intent may be inferred, or that the employer's justification is pretextual.  *Lewi*, 934 F.3d at 1185.

Here, the district court determined that Gibson's discrimination claims failed under this "convincing mosaic" approach because she could not demonstrate pretext.  We agree.  A plaintiff cannot establish pretext sufficient to survive summary judgment simply by claiming the employer's stated reason for her termination is false; she must further establish there is a "real" reason for her termination, i.e., discrimination.  *See Flowers v. Troup Cnty.,*

*Ga., Sch. Dist.*, 803 F.3d 1327, 1339 (11th Cir. 2015). For example, allowing a plaintiff to survive summary judgment would be inappropriate "if the record 'conclusively revealed some other, nondiscriminatory reason" or the 'plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). Gibson has not shown that JetBlue's stated reason was false. The only "evidence" put forward by Gibson was her self-assessment that she was a good employee. The district court properly disregarded this as self-serving and insufficient to create a disputed issue of material fact. *Alvarez*, 610 F.3d at 1266 ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs, and to be blunt about it, not on reality as it exists outside of the decision maker's head."). Furthermore, she did not present evidence that Schmidt, King, or other decisionmakers at JetBlue were lying or otherwise dishonest about their assessments of her performance.

Nor has Gibson shown that JetBlue's real reason for terminating her employment was discrimination. The record is simply devoid of other circumstantial evidence sufficient to raise a reasonable inference of discrimination. Indeed, the record overwhelmingly demonstrates that Schmidt, King, and others were objectively concerned about Gibson's performance from the time that she submitted her first analysis as a Senior Analyst. We also cannot ignore the fact that Schmidt hired Gibson knowing she was both Black and

over the age of forty—a decision Schmidt made despite the other candidates for the position being white and under forty, respectively. Thus, we conclude that the district court properly determined that Gibson failed to raise a triable issue concerning JetBlue's discriminatory intent.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of the JetBlue on Gibson's race and ADEA claims.

**AFFIRMED.**